[Civ. No. 16749. Second Dist., Div. Two. July 11, 1949.]

FLORENCE WHEELER et al., Appellants, v. HARRY E. BARKER, Respondent.

Marion P. Betty and Joseph D. Taylor for Appellants.

William T. Selby, Sheridan, Orr, Bates & Barnes and Albert D. Barnes for Respondent.

WILSON, J.—This is an action to recover damages for technical assault and battery—the performance by defendant, a physician and surgeon, of an alleged unauthorized operation on plaintiff, Florence Wheeler. (See *Valdez* v. *Percy,* 35 Cal. App.2d 485, 491 [96 P.2d 142].) The operation was performed in a hospital in the city of Ventura. A verdict was rendered in favor of defendant and plaintiffs have appealed from the judgment entered pursuant to the verdict. They have also purportedly appealed from the verdict and from the order denying their motion for a new trial, both of which are nonappealable.

For several months prior to the operation Mrs. Wheeler, who will be referred to as plaintiff, had been treated by defendant for continued vaginal bleeding. In January, 1946, defendant made a pelvic examination and found what appeared to be a small fibroid tumor on the anterior surface of the uterus. In succeeding months other examinations revealed the mass in the right ovarian region at first to be about half as large as a walnut which grew to the size of a lemon. During July plaintiff consulted physicians in Santa Barbara. One diagnosed her symptom as an ovarian cyst and the other as a growth on the uterus. Both recommended immediate surgery. Plaintiff told defendant of these examinations and recommendations. On August 1, 1946, plaintiff was again examined by defendant and he again advised surgery. After plaintiff had telephoned to her husband she consented to an operation.

Plaintiff testified that she consented only to the removal of her right ovary and nothing more. Defendant and his nurse testified that he told plaintiff it might be necessary to remove the right ovary or the uterus, depending on the condition found when her abdomen had been opened, and that he promised not to remove both ovaries, which was the only limitation requested by plaintiff.

On August 4, plaintiff went to the hospital where she signed a consent to "whatever anesthetic and operation which may be decided to be necessary or advisable." Clara Lorenzana, a registered nurse, signed as a witness.

Plaintiff contends that she has no recollection of ever having signed a release and that she did not sign it before she had

taken a sedative. The nurse who signed the consent as a witness testified that plaintiff signed the release during the afternoon while she was awake and before any sedative had been given.

On August 5, 1946, defendant, assisted by another physician, performed the operation. Upon making the opening in plaintiff's abdomen they found the ovaries were not diseased but the mass which had been felt on examination was a large tumor attached to the uterus adjacent to the right ovary and the uterine wall was filled with multiple fibroid tumors. The surgeons consulted about the condition found and agreed that a subtotal hysterectomy was necessary and proceeded with that operation. Upon its completion plaintiff's husband was told what had been· done and when the effects of the anesthetic had subsided plaintiff was likewise told what had been removed. Neither of them expressed any dissatisfaction. The postoperative course was normal. The first difficulty between the parties arose when defendant refused to give plaintiff sleeping pills which she requested. She became angry and ceased to be defendant's patient.

Defendant, his assistant surgeon and another local physician all testified that the operation was necessary in accordance with the standards of practice in the community to preserve plaintiff's health, and that she would have continued to suffer from the bleeding had the uterus not been removed. There was evidence that plaintiff's condition of health might have become worse, that the bleeding would have continued, and that the tumor might have become malignant. Plaintiff produced medical testimony that the operation was not necessary to preserve her health.

Plaintiff has argued the facts on this appeal upon the theory that the evidence given by her and in her behalf is to be accepted without regard to the evidence of any other witnesses. The rule is to the contrary. A reviewing court must view the evidence in the light most favorable to the party successful in the trial court and resolve all conflicts in his favor. If there is substantial evidence to sustain the conclusions of the trier of facts our power ''begins and ends with a determination as to whether there is any substantial evidence'' sustaining the judgment. (*Estate of Pohlmann,* 89 Cal. App.2d 563 [201 P.2d 446, 449-50]; *Buckhantz* v. *R. G. Hamilton & Co.,* 71 Cal.App.2d 777, 779 [163 P.2d 756]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) By reason of this rule it is sufficient to say that the evidence sus-

tains the verdict of the jury and the ensuing judgment. We shall therefore confine our discussion to errors alleged to have been committed at the trial.

Several of plaintiff's objections are with reference to the signed consent to the operation. Since the evidence is conflicting as to (1) the conversations between plaintiff and defendant in which plaintiff was told what operation was probably necessary, (2) their conversations in which plaintiff orally consented to an operation and what operation she consented to, (3) when the written consent was signed, whether before or after the sedative had been administered, (4) whether plaintiff knew what she was doing when she signed it, we must accept the verdict and judgment as conclusive on those matters. The document is general in its terms and contains a consent to whatever operation might be found to be necessary or advisable.

 The purpose of the operation was to stop the vaginal bleeding that had continued for several months and to remove the growth on the female organs. It was defendant's duty to do whatever was necessary to effect a cure. In exercising his best judgment as to what was the proper course to pursue he was performing a professional service for which he had been employed. When a surgeon is confronted with an emergency or an unanticipated condition and immediate action is necessary for the preservation of the life or health of the patient and it is impracticable to obtain consent to an operation which he deems to be immediately necessary, it is his duty to do what the occasion demands within the usual and customary practice among physicians and surgeons in the same or similar localities, and he is justified in extending the operation and in removing and overcoming the condition without the express consent of the patient. (*Preston* v. *Hubbell,* 87 Cal. App.2d 53, 57-8 [196 P.2d 113] ; 41 Am.Jur. § 110, p. 222.)

 The consent to the operation was pleaded in *haec verba* by defendant in his answer. The genuineness and due execution are deemed to have been admitted since plaintiff did not file an affidavit denying the same within 10 days after receiving a copy of the answer. (Code Civ. Proc., § 448[1];

---

[1]Section 448: ''When the defense to an action is founded upon a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file with the clerk, within ten (10) days after receiving a copy of the answer, an affidavit denying the same, and serve a copy thereof on the defendant.''

782

*Stoneman* v. *Fritz,* 34 Cal.App.2d 26, 29-31 [92 P.2d 1035];
*Donovan* v. *Security-First National Bank,* 67 Cal.App.2d 845,
852 [155 P.2d 856].)

■ Plaintiff claims that her failure to file such affidavit
does not result in an admission of the genuineness and due
execution of the instrument for the reason that she was not
able to obtain an inspection of the document upon demand
therefor as provided in section 449 of the Code of Civil Pro-
cedure.[2] It appears that in April, 1947, about five months
before the action was commenced, plaintiff and her husband
went to the hospital for the purpose of inspecting the consent
and, according to plaintiff's testimony, the hospital attendant
allowed them to see her signature but kept the text of the
document covered. Since this occurrence was prior to the
commencement of the action and defendant was not a party to
the alleged concealment the rights of the parties are not af-
fected. The facts with reference to the demand for inspection
after plaintiff commenced the action are as follows: The an-
swer was filed on September 5, 1947; on December 13, plaintiff
filed her denial of the genuineness and due execution of the
instrument; plaintiff's counsel assert that on September 11,
1947, they served by mail and filed a notice requesting an
opportunity to inspect the document; defendant's attorneys
deny having received such notice but, on October 20, after
obtaining knowledge that plaintiff desired an inspection, wrote
to her attorneys stating that the document was not in the pos-
session of defendant or his counsel but was in the files of the
hospital and offered their cooperation in securing permission
of the officials of the hospital for an inspection. It does not
appear that plaintiff thereafter made any effort to see the
document; she not only had defendant's consent and his offer
of cooperation but she could have taken the deposition of an
official of the hospital under section 2021 of the Code of Civil
Procedure.[3] She did not take such deposition nor did she
make an application for relief under section 473 of the Code

[2]Section 449: "But the execution of the instrument mentioned in
the two preceding sections, is not deemed admitted by a failure to
deny the same under oath, if the party desiring to controvert the same
is, upon demand, refused an inspection of the original. Such demand
must be in writing, served by copy, upon the adverse party or his
attorney, and filed with the papers in the case."

[3]Section 2021: "The testimony of a witness in this State may be
taken by deposition in an action at any time after the service of the
summons or the appearance of the defendant, . . . 6. When the wit-
ness is the only one who can establish facts or a fact material to the
issue; . . ."

of Civil Procedure for her failure to file an affidavit within the time provided in section 448.

█ Notwithstanding plaintiff's admission of the genuineness and due execution of the consent, she had a right to offer evidence to the effect that her signature was secured through fraud or duress or while she was under the influence of a sedative, or for any other reason she did not know what she was signing. She testified without objection from defendant that she was not aware of what she was signing and that she signed the document after a sedative had been administered. In both of these particulars she was contradicted by the nurse who signed as a witness to her signature. In view of the conflict the implied finding of the jury against her contentions will not be interfered with by a reviewing court.

█ Plaintiff complains of the instructions given to the jury with reference to the consent and the admission of its genuineness and due execution. The instructions with reference thereto are in effect as follows:

(a) If the jury found she was under the effects of sedatives or narcotics and that she did not know what she was doing when she signed the document, the jury was to disregard it and its provisions entirely and find that she did not consent in writing to any operation;

(b) Plaintiff admitted the due execution and genuineness of the written consent to operate;

(c) By the term "genuineness" is merely meant that the written consent is the identical instrument which it purports to be;

(d) The term "due execution" means only that the written consent was knowingly signed and delivered by plaintiff in the form in which it now appears but that plaintiff had the right to challenge its effect by evidence that she did not know what she was signing because she was under the effects of sedatives, and that if the jury found she was under the effects of sedatives at the time she signed the consent and did not know what she was signing, then the written consent was to be disregarded;

(e) Whether plaintiff consented to the operation and to the removal of her uterus as a part of the operation is a question of fact to be determined by the jury from all evidence in the case.

(f) Such consent need not necessarily be in writing but may be oral and may be expressly given or may be implied from the circumstances of the case;

(g) If the words or conduct of plaintiff during the time

she was a patient of defendant and prior to the operation were such as would warrant a doctor of ordinary prudence to understand that under the circumstances she did consent to the particular operation which defendant performed, then he was justified in relying upon such words and conduct on the part of plaintiff as constituting her consent to the performance of that particular operation;

(h) Defendant alleged in his answer that before the performance of the operation she signed and acknowledged to defendant and the hospital a document (the consent in question which was read by the jury);

(i) Plaintiff as a matter of law admitted the document to be genuine and to have been executed by plaintiff and in the jury's consideration of the evidence they must accept it to be an established fact that the document is genuine and was duly executed by plaintiff;

(j) That a document is genuine and has been duly executed means that the party who appears to have made it has attached his signature thereto knowingly and caused it to be delivered.

We find no error in these instructions. They fully cover the issues relating to plaintiff's consent. The statement that she admitted the genuineness and due execution of the consent is established by the facts that she did not file a denial within 10 days after the filing of the answer and that her failure so to do was not excused in any manner provided by law. The jury was told that genuineness and due execution meant only that plaintiff had attached her signature thereto knowingly, but if the jury found she was under the effects of sedatives or narcotics and did not know what she was doing when she signed the document then the jury should disregard it and find that she did not consent in writing to the operation.

The instructions requested by plaintiff and refused by the court are sufficiently covered by those which were given. This opinion will not be protracted by quoting the instructions given and those refused.

A reviewing court will not take into account one instruction separate from the others, but all will be considered together, each in relation to and in connection with the others. If they harmonize as a whole and fairly and correctly state the law pertinent to the case a reversal of the judgment will not result because one instruction does not contain all the applicable elements and conditions. (*Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 95-6 [172 P.2d 725] and cases cited.)

By the signed consent plaintiff agreed to "whatever . . . operation which may be decided to be necessary or advisable." This instrument furnished the basis for the admission of evidence that a necessity existed for the removal of two thirds of plaintiff's uterus, and that it was necessary for defendant and his assisting surgeon to make an emergent decision upon discovery of its condition. The court did not err in admitting such evidence nor was there error in the instruction to the effect that if a doctor is confronted with an emergency and uses his best judgment he is justified in proceeding with the operation. The terms "emergency," "necessary" and "necessity" recur throughout the evidence.

Plaintiff contends that although an emergency may have existed the removal of her uterus was not necessary at that time. This argument is without force. Each of such terms is affinitive to the other. An "emergency" is an unforeseen combination of circumstances which calls for immediate action; a "necessity" is that which is unavoidable, inevitable or indispensable. When an emergency occurs there is an immediate necessity to cope with it. The condition of plaintiff's internal organs was not ascertainable with certainty until an incision had been made. The existence of a large fibroid tumor on the uterus and multiple tumors and nodules on the inner walls constituted an emergency which required the surgeons, in the light of their experience, to determine at once whether the removal of the diseased portion was necessary for the preservation of plaintiff's health. The growth of the mass within a few months from the size of defendant's thumb to that of a lemon indicated a serious condition which was recognized by the Santa Barbara surgeon who told plaintiff the growth "would become as large as a baby if not removed." Plaintiff had communicated that statement to defendant. He therefore had not only his own years of experience and the advice of his assisting surgeon but the opinion of the Santa Barbara doctor. The latter had advised plaintiff that the preservation of her health depended upon the removal of the foreign growth, together with that portion of the uterus to which it was attached. Defendant would have been subject to grave censure had he closed the incision and awaited plaintiff's recovery from the effects of the anesthetic in order to have further consultation with her concerning the removal of the alien material.

Defendant and his assistant both testified that the removal of a portion of the uterus was necessary to preserve plaintiff's

health which would have been endangered if the uterus had been left in the condition in which they found it. A physician practicing in Ventura, who had previously practiced in Los Angeles County, called by plaintiff, testified in response to a hypothetical question that no emergency existed and that the incision might have been closed and the uterus subsequently treated by X-ray or radium. (Early in 1946, when defendant first diagnosed plaintiff's symptom as a fibroid uterus, she declined to have either an operation or X-ray treatment.) On cross-examination the witness was asked if, when confronted with the condition found as described in the hypothetical question, it would have been necessary for the operating surgeon to make a decision promptly as to whether he should or should not remove the uterus. The witness replied, ''Yes, it was necessary for the surgeon to make that decision.'' The jury accepted the evidence of the surgeons who personally observed plaintiff's condition rather than the opinion of one whose knowledge was acquired from a hypothetical question.

The argument made to the jury by defendant's counsel was not objectionable. It was confined to a discussion of the evidence concerning the emergent situation, the necessity for making an immediate decision as to what should be done, and the following up of such decision by completing the operation.

Upon a hypothetical question which stated the facts relating to defendant's examination of plaintiff, his findings, his treatment, and the operation, a Los Angeles physician was asked to give his opinion as to whether an emergency existed requiring the removal of two thirds of plaintiff's uterus. An objection on the ground that the witness had not been shown to have been practicing under the same standards of practice as prevailed in Ventura was sustained, whereupon plaintiff offered to prove that the witness would state that it was unnecessary to remove a portion of the uterus at the time the operation was performed; that medical knowledge is disseminated throughout the state and the standard of medical science and medical care in Los Angeles County and Ventura County are the same due to the facts (1) that the sources of information are the same and (2) the cities of Los Angeles and Ventura are in close proximity to each other and the two counties adjoin each other. Defendant's objection to the offer of proof was sustained.

The situation existing in the instant case is entirely different from that found in the cases relied on by plaintiff—*Sales*

v. *Bacigalupi*, 47 Cal.App.2d 82 [117 P.2d 399], *Lewis* v. *Johnson*, 12 Cal.2d 558 [86 P.2d 99], and *Warnock* v. *Kraft*, 30 Cal.App.2d 1 [85 P.2d 505]. In each case the physician testifying practiced in a locality similar and immediately adjacent to that in which the operation was performed or the treatment given. While Los Angeles and Ventura Counties are adjacent to each other, the cities are some 60 miles apart and Ventura, in comparison with Los Angeles and its surrounding area, is a rural community not having the advantages afforded by a city with a population of more than 2,000,000 persons and containing many large, modern hospitals. The court did not err in refusing to permit the Los Angeles physician to express his opinion on the subject involved.

Another physician who had practiced in New York City and in Los Angeles was offered as a witness as to the existence of the emergency. His evidence was excluded, and properly so, for the reasons above noted. ■■■ For the purpose of laying the foundation for the admission of his evidence the physician above mentioned who had practiced in both counties was asked whether the standard of practice of medicine is similar in the two counties. An objection by defendant was sustained and the ruling is assigned as error. The witness should have been permitted to answer the question. While the ruling of the court was error it is not prejudicial. A Ventura physician had expressed his opinion that an emergency did not exist and that the immediate removal of plaintiff's uterus was unnecessary. There was already a conflict in the expert testimony. If the witness had been allowed to testify and had answered that the standard of practice in the two counties is the same the result would have been the introduction of the testimony of another physician who might have said that an emergency did not exist. Such evidence would have been merely cumulative. The error in rejecting the evidence is not prejudicial and does not require a reversal of the judgment. (Const., art. VI, § 4½.)

Judgment affirmed. The attempted appeals from the verdict and from the order denying plaintiff's motion for new trial are dismissed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied July 26, 1949, and appellants' petition for a hearing by the Supreme Court was denied September 8, 1949. Carter, J., voted for a hearing.