[Civ. No. 23003.   First Dist., Div. One.   May 24, 1967.]

BERDELLA CUSTODIO et al., Plaintiffs and Appellants, v. F. HENNING BAUER et al., Defendants and Respondents.

Thomas L. Bocci, James J. Duryea, Michael Tamony and Terence J. Keeley for Plaintiffs and Appellants.

Peart, Baraty & Hassard, Peart, Hassard, Smith & Bonnington, Salvatore Bossio, John I. Jefsen and James F. Ernst for Defendants and Respondents.

SIMS, J.—Plaintiffs Braulio and Berdella Custodio, husband and wife, have appealed from a judgment of dismissal[1] entered upon an order sustaining without leave to amend defendants' demurrer to a complaint in which plaintiffs sought to recover damages resulting from the pregnancy of Mrs. Custodio following the failure of an operation undertaken and performed to accomplish her sterilization.[2]

*Pleadings*

The complaint filed January 20, 1965 contains seven causes of action against three physicians, two of whom have appeared and are parties to these proceedings. Each cause of action sets forth the following allegations: that the defendants were and are physicians duly licensed to practice and engaged in the practice of medicine in the City and County of San Francisco; that each of defendants represented to Mrs. Custodio "that she had more than sufficient children for her age in life and that additional children would aggravate a then existing bladder and kidney condition and . . . that the removal of the portion of the Faloppian [*sic*] tubes would accomplish a sterilization and would lend itself to a course of improvement in the physical condition of this plaintiff as it

[1]The original appeal was taken following the entry of the court's order sustaining the demurrer without leave to amend. A question arose as to the propriety of proceeding with the appeal on that record. (Code Civ. Proc., § 963; *Cole* v. *Rush* (1953) 40 Cal.2d 178 [252 P.2d 1]; 3 Witkin, Cal. Procedure (1963) Appeal, §§ 19-20, pp. 2162-2164.) The record was augmented to show a subsequently entered judgment, and the appeal has been entertained as prematurely filed from that judgment. (Cal. Rules of Court, rule 2(c); *Evola* v. *Wendt Constr. Co.* (1958) 158 Cal.App.2d 658, 660-662 [323 P.2d 158].)

[2]For a brief description of the surgical procedures for female and male sterilization and observations concerning the permanence of the respective operations, see Note, *Elective Sterilization* (1965) 113 U.Pa.L.Rev. 415, 416-417. Most of the litigated failures involve a vasectomy. In addition to *Milde* v. *Leigh* (1947) 75 N.D. 418 [28 N.W.2d 530, 173 A.L.R. 738], and the instant case, attention has been directed to the case of *Nicol* v. *Komaniski*, No. 634423, Superior Court of the State of Washington, in and for the County of King, in which a verdict was directed for defendant December 14, 1966, in an action apparently predicated on failure to sterilize the mother.

A graphic account of a failure of female sterilization was contained in the San Francisco Chronicle, April 1, 1967, where a picture of mother and child was accompanied with the following legend: "When Kathleen Holloway had her tenth child two years ago, a family consultant advised her to have no more since her husband made only $40 a week as a London bone and rag picker. The consultant thought the Pill wasn't enough, so on his recommendation Mrs. Holloway had a sterilizing operation. Apparently that wasn't enough either. She gave birth to a 9-pound 3-ounce girl at St. Mary's Hospital. The doctors are still trying to figure out what happened."

related to her emotional and nervous makeup, as well as the physical repair of her kidney and bladder organs''; that plaintiffs agreed in writing that an operative procedure could be undertaken to accomplish the foregoing purpose; and that on or about November 14, 1963, Mrs. Custodio employed each of the defendants to treat her professionally ''for the purpose of removing portions of the Faloppian [sic] tubes, so as to accomplish a sterilization that would permanently defeat procreation or conception of a fetus in the female organs of this plaintiff, . . .'' and agreed to pay a reasonable sum for those services; that the defendants and each of them ''undertook as physicians to remove a portion of the Faloppian [sic] tubes and to otherwise relocate the said tubes anatomically, so as to accomplish the act of sterilization''; and ''that in consequence of the said negligent conduct of said defendants and each of them, plaintiff became pregnant on or about the 19th day of August, 1964; that plaintiff became aware of her pregnancy on or about the 30th day of November, 1964, at which time plaintiff discovered the negligent actions and conduct of the said defendants and each of them.''

The first cause of action is predicated upon negligent treatment in the performance of the operation. The second cause of action is predicated upon negligent treatment in failing to correctly apprise plaintiff of the consequences of the operation. The fourth count contains a third cause of action based on malpractice. It is predicated upon the negligent failure to fully advise Mrs. Custodio of the procedures available for her treatment.

The third cause of action is predicated upon negligent misrepresentation.

In the fifth cause of action the husband seeks damages for the tortious conduct of the defendants as alleged in the first four causes of action.

In the sixth cause of action the husband and wife jointly seek damages for fraud and deceit.

In the seventh cause of action, both plaintiffs seek to recover for breach of contract. They allege: ''That defendants and each of them violated and breached the terms of said written agreement in that said defendants did not perform their services in the manner required of doctors in the San Francisco Bay Area. . . .''

Each cause of action repeats allegations of Mrs. Custodio that she will require $1,500 in medical expenses for prenatal care, postnatal care and hospitalization by reason of her preg-

nancy; that she "will suffer additional damage to her person and body in that she will be exposed to further emotional and nervous complications, increased exposure to injury to her kidney, bladder and other organs of the body"; and that she "was hurt, and injured in her health, strength and activity, sustaining injury to her body, and shock and injury to her nervous system and person, all of which said injuries have caused and continue to cause [her] great mental, physical and nervous pain and suffering, all to her general damage in the sum of Two Hundred Fifty Thousand Dollars ($250,000.00)." Additionally each sets forth: "That the birth of plaintiff's child will require of the plaintiff, additional costs and expenses to properly care for and raise the said child to the age of maturity; that said cost is estimated to be in the sum of Fifty Thousand Dollars ($50,000.00) over said period of time, which constitutes additional special damages to this plaintiff."[3]

In the fifth cause of action Mr. Custodio seeks for himself recovery of $1,500 for the medical costs of the pregnancy and $50,000 to care for and raise the then expected child. He also alleged: "That this plaintiff's emotional and nervous system will be affected by said pregnancy and subsequent birth of said child, all of which is a direct consequence of the negligent conduct of said defendants and each of them; that this plaintiff will be damaged generally in the sum of Fifty Thousand Dollars ($50,000.00)."

In the cause of action for fraud and deceit the plaintiffs jointly seek $500,000 punitive damages. In the contract cause of action damages are alleged to consist of the $51,500 special damages referred to above. Each plaintiff prays for $51,500, special damages, and jointly they pray for $500,000 punitive damages, and $51,500 special damages.

The demurrer to the complaint was based on: (1) failure to state facts sufficient to constitute a cause of action; (2) the bar of the provisions of Code of Civil Procedure section 340, subdivision 3;[4] (3) uncertainty in the seventh cause of action

---

[3] At the hearing on appeal it was reported that mother and child survived the delivery.

[4] Defendants have not urged the bar of the statute of limitations in support of the judgment. It is well established in malpractice actions that the statute does not commence to run until the patient discovers his injury, or through the exercise of reasonable diligence should have discovered it. (*Greninger* v. *Fischer* (1947) 81 Cal.App.2d 549, 553 [184 P.2d 694], and cases cited; see also *Weinstock* v. *Eissler* (1964) 224 Cal. App.2d 212, 226-227 [36 Cal.Rptr. 537]; and comment *Bathke* v. *Rahn* (1941) 46 Cal.App.2d 694, 696 [116 P.2d 640].)

with respect to the nature and terms of the written agreement referred to therein; and (4) failure to separately state several causes of action.

The court sustained the demurrer without leave to amend on the ground, stated in its order (Code Civ. Proc., § 472d), of failure to state facts sufficient to constitute a cause of action against the demurring defendants.

*Issues*

Plaintiffs contend that the allegations of the complaint sustain causes of action for negligence (malpractice), misrepresentation (both negligent and intentional), and for breach of contract.

Defendants' principal contention is that pregnancy, the ensuing birth of a child, and the costs and expenses of the delivery and rearing of a child, are not legally cognizable injuries. They further assert that any alleged breach of duty by defendants is not the proximate cause of the alleged pregnancy and attendant costs and expenses; that the alleged misrepresentations are nonactionable statements of opinions; and that no action will lie for breach of contract because there is no warranty of a cure in a contract for medical services.

■ "The rules relating to the trial court's determination of a demurrer on the ground that a pleading does not state facts sufficient to constitute a cause of action and which govern a reviewing court in considering an appeal from a judgment entered on the sustaining of a demurrer on that ground are in general as follows: The allegations of the complaint must be regarded as true. ■ It is assumed that plaintiff can prove all the facts as alleged; defects in the pleading which do not affect the substantial rights of the parties are disregarded; pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears; the allegations must be liberally construed with a view to substantial justice between the parties and that the administration of justice shall not be embarrassed by technicalities or useless forms. [Citation.]" (*Mercer* v. *Elliott* (1962) 208 Cal.App.2d 275, 277-278 [25 Cal.Rptr. 217]; and see also *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 41-42 [172 P.2d 867]; and *M. G. Chamberlain & Co.* v. *Simpson* (1959) 173 Cal.App.2d 263, 267 [343 P.2d 438].)

■ "[W]here a complaint is not subject to general demurrer, it is an abuse of discretion to sustain a demurrer

without leave to amend even though the complaint may be subject to special demurrer and . . . no request to amend is necessary. [Citations.]'' (*Greninger* v. *Fischer* (1947) 81 Cal.App.2d 549, 551 [184 P.2d 694]; and see Code Civ. Proc., § 472c; *Speegle* v. *Board of Fire Underwriters, supra,* 29 Cal.2d 34, 42; and *Wennerholm* v. *Stanford University School of Medicin*e (1942) 20 Cal.2d 713, 719 [128 P.2d 522, 141 A.L.R. 1358].)

The application of the foregoing rules leads to the conclusion that the trial court abused its discretion in sustaining defendants' demurrer without leave to amend. The judgment must be reversed and the case must be remanded for disposition of defendants' grounds of special demurrer and further proceedings in accordance with the views expressed in this opinion. Defendants' objections with respect to proximate cause, the opinion nature of the alleged misrepresentations and the lack of warranty in the alleged contract do not, as a matter of law, negate the otherwise actionable nature of the allegations of the complaint. The allegations made admit of pleading and proof of conventional damage. Determination of principles of public policy which are claimed to render certain consequences of proved wrongful acts and omissions noncompensable may best await the proof of the elements of damage claimed by plaintiffs. The failure to prove an actionable wrong, or the failure to show injuries of the nature alleged, would render further pursuit of that subject moot.

*Negligence*

''There are certain general principles to be noted in relation to malpractice cases. The 'law has never held a physician or surgeon liable for every untoward result which may occur in medical practice' [citations] but it 'demands only that a physician or surgeon have the degree of learning and skill ordinarily possessed by practitioners of the medical profession in the same locality and that he exercise ordinary care in applying such learning and skill to the treatment of his patient.' (*Lawless* v. *Calaway, supra,* 24 Cal.2d 81, 86 [147 P.2d 604]). No different or 'higher degree of responsibility' is imposed 'in making a diagnosis than in prescribing treatment.' [Citations.]'' (*Huffman* v. *Lindquist* (1951) 37 Cal. 2d 465, 473 [234 P.2d 34, 29 A.L.R.2d 485].)

''Mere error of judgment, in the absence of a want of reasonable care and skill in the application of his medical learning to the case presented, will not render a doctor

responsible for untoward consequences in the treatment of his patient [citations], for a doctor is not a 'warrantor of cures' [citation] or 'required to guarantee results' [citations].'' (*Id.*, p. 475; and see, generally, *Hesler* v. *California Hospital Co.* (1918) 178 Cal. 764, 766-767 [174 P. 654]; *Stephenson* v. *Kaiser Foundation Hospitals* (1962) 203 Cal.App.2d 631, 635 [21 Cal.Rptr. 646]; *Johnston* v. *Brother* (1961) 190 Cal.App. 2d 464, 471 [12 Cal.Rptr. 23]; *Norden* v. *Hartman* (1955) 134 Cal.App.2d 333, 337 [285 P.2d 977]; *Gluckstein* v. *Lipsett* (1949) 93 Cal.App.2d 391, 396 [209 P.2d 98]; *Greninger* v. *Fischer, supra,* 81 Cal.App.2d 549, 551-552; *McNamara* v. *Emmons* (1939) 36 Cal.App.2d 199, 205 [97 P.2d 503]; *Ley* v. *Bishopp* (1928) 88 Cal.App. 313, 317 [263 P. 369]; and *Houghton* v. *Dickson* (1916) 29 Cal.App. 321, 324 [155 P. 128]; Louisell & Williams, Trial of Medical Malpractice Cases (1966) pars. 8.03-8.06, p. 194 et seq.)

''Negligence may be pleaded in general terms. [Citations.]'' (*Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212, 236 [36 Cal.Rptr. 537]; and see *Greninger* v. *Fischer, supra,* 81 Cal.App.2d 549, 552.)

◼ The allegations of the first count are sufficient to charge negligence in the performance of the operation.[5] (See *Milde* v. *Leigh* (1947) 75 N.D. 418 [28 N.W.2d 530, 538, 173 A.L.R. 738]; Louisell & Williams, *op. cit.,* par. 4.02, p. 112.) ◼ The second cause of action may be interpreted as a postoperative negligent failure to advise or properly prescribe for plaintiff so that she could be properly guided in preventing conception.[6] (See Louisell & Williams, *op. cit.,* pars. 2.17-2.24, p. 52 et seq.) ◼ The fourth cause of action suggests that the operation was unwarranted because the defendants prior to the operation, failed to fully explain

---

[5]The charging allegations of this cause of action are: ''That the defendants and each of them failed to use reasonable care or skill of physicians in the ordinary exercise [?] possessed by others of their profession in the San Francisco Bay Area in . . . that the said surgical procedures were not completely performed in that there was an insufficient cutting of the Faloppian [*sic*] tubes and a failure to relocate the tubes anatomically so as to avoid the regeneration of said tubes, resulting in a subsequent conception of a child through the act of sexual intercourse.''

[6]It alleges: ''That at all times herein mentioned, said defendants and each of them were negligent in failing to inform the plaintiff that said surgical procedure and sterilization of her person was not absolute in nature and that a possibility did exist that she could thereafter become pregnant; that in · relying upon defendants' representations, and not being informed of the possibility that said surgical operation was not fool proof, plaintiff failed to use protective devices that would have avoided the conception of her tenth child; that the actions and conduct

the consequences or effects of the operation, and so rendered her consent nugatory.[7] (Cf. *Hundley* v. *St. Francis Hospital* (1958) 161 Cal.App.2d 800, 806-807 [327 P.2d 131]; *Gist* v. *French* (1955) 136 Cal.App.2d 247, 268 [288 P.2d 1003]; with *Danielson* v. *Roche* (1952) 109 Cal.App.2d 832, 835-836 [241 P.2d 1028]; *Kritzer* v. *Citron* (1950) 101 Cal.App.2d 33, 37-38 [224 P.2d 808]; *Wheeler* v. *Barker* (1949) 92 Cal.App.2d 776, 781-783 [208 P.2d 68]; and see lengthy discussion of subject of consent, *Shetter* v. *Rochelle* (1965) 2 Ariz.App. 358, 363-370 [409 P.2d 74, 79-86], modified (1966) 2 Ariz. App. 607 [411 P.2d 45]; Louisell & Williams, *op.cit.*, par. 8.09, p. 220; and Note (1961) 34 So.Cal.L.Rev. 217.)

■ The allegations of each of the three causes of action referred to, and that portion of the fifth cause of action dependent upon them, are sufficient to show a failure to use due care with respect to duties owed to plaintiffs, and to show a possible battery on the plaintiff for lack of effective consent. Defendants do not seriously question the sufficiency of the allegations on this ground. Their objections on the grounds of public policy, lack of proximate cause, and absence of legally cognizable damages are hereinafter discussed.

*Misrepresentation*

"The complaint . . . in an action founded on false representations must allege facts showing the following elements of the cause of action: *first*, representations of material facts by defendant; *second*, the representations were not true; *third*, defendant either did not believe them to be true, or knew them to be false, at the time they were made; *fourth*, defendant intended to induce action or conduct by the plaintiff; *fifth*, plaintiff justifiably acted in reliance upon the represen-

---

of the defendants and each of them in failing to properly notify and inform said plaintiff, so that she might declare her decision in accepting or rejecting said surgical procedure, without full information or notice as to the potential results thereof, proximately brought about the present condition of the plaintiff and her present pregnancy; that all of said conduct has resulted in damage and injury to this plaintiff, as herein set forth.''

[7]This count states: "That said defendants and each of them were careless and negligent in failing to inform this plaintiff of the several surgical procedures that would accomplish a complete sterilization, thereby depriving this plaintiff of the opportunity of deciding upon which procedure she considered best for her circumstances. That in failing to properly advise said plaintiff or to inform plaintiff of the several surgical procedures that would accomplish a complete sterilization, plaintiff was deprived of the opportunity to accept that surgical procedure that would accomplish a complete sterilization and thereby avoid the reoccurrence of a pregnancy that would result in injury and damage to this plaintiff.''

tations; and *sixth*, plaintiff sustained damage as a proximate result thereof. (*Gagne v. Bertran*, 43 Cal.2d 481, 487 [275 P.2d 15].)'' (*Mercer v. Elliott, supra*, 208 Cal.App.2d 275, 278; and see *M. G. Chamberlain & Co. v. Simpson* (1959) 173 Cal.App.2d 263, 275-276 [343 P.2d 438].)

Plaintiffs contend that the third cause of action[8] (and the fifth by incorporation) sets forth a cause of action for negligent misrepresentation. They assert that the allegations of the sixth cause of action are sufficient to show actual fraud and deceit.[9] (See Rest.2d Torts, § 57, illus. 3.) Defendants contend that any representations concerning the efficacy of the sterilization operation were mere matters of opinion.

The matter is governed by *Gagne v. Bertran* (1954) 43 Cal.2d 481 [275 P.2d 15], where it is stated: ''Moreover, even if defendant's statement was an opinion, plaintiffs justifiably relied thereon. Defendant held himself out as an expert, plaintiffs hired him to supply information concerning matters of which they were ignorant, and his unequivocal statement necessarily implied that he knew facts that justified his statement.'' (43 Cal.2d at p. 489.)

The allegations of the foregoing causes of action, if proved, reflect a breach of duty by the defendants.

*Contract*

It is generally stated that ''a doctor is not a 'warrantor of cures' . . . or 'required to guarantee results.' '' (*Huffman v. Lindquist, supra*, 37 Cal.2d 465, 475.)

''It is thoroughly settled in California that 'In the absence of an express contract the physician or surgeon does not war-

---

[8]This count alleges: ''That defendants and each of them carelessly and negligently represented and advised plaintiff that she could engage in sexual intercourse with safety and that contraceptive devices were not necessary in that plaintiff could not thereafter become pregnant, all of which was untrue and known to said defendants to be untrue; that said plaintiff relied upon the statements and representations of said defendants and did engage in sexual intercourse with her husband without the use of contraceptive devices, resulting in injury, damages and other expenses that will hereafter be encountered by this plaintiff.''

[9]Plaintiffs jointly allege: ''That the statements made by said doctors relating to said sterilization that said plaintiff, BERDELLA CUSTODIO, would not thereafter become pregnant were false and known by said defendants to be false and were made for the purpose of deceiving plaintiffs into believing that said statements were true, so that said defendants and each of them might profit by said operative procedure and the cost to the plaintiffs in paying for said services; that at the time said defendants made said statements to said plaintiffs, they had superior means of information as to the nature of said sterilization and the potential exposure of a subsequent pregnancy.''

rant cures. By taking a case he represents that he possesses the ordinary training and skill possessed by physicians and surgeons practicing in the same or similar communities and that he will employ such training, care and skill in the treatment of his patients. [Citations.]' (*McLennan* v. *Holder,* 1 Cal.App.2d 305, 314 [36 P.2d 448].)'' (*McNamara* v. *Emmons* (1939) 36 Cal.App.2d 199, 205 [97 P.2d 503].)

In the absence of an express contract "the general rule is applicable that those who sell their services for the guidance of others in their economic, financial, and personal affairs are not liable in the absence of negligence or intentional misconduct.'' (*Gagne* v. *Bertran, supra,* 43 Cal.2d 481, 487.)

The opinion in *Gagne* distinguishes *Crawford* v. *Duncan* (1923) 61 Cal.App. 647 [215 P. 573]. In the latter case the court noted: "This is not an action of tort. That is, it is not an action for malpractice based upon negligence. It is an action for the breach of an alleged oral agreement whereby defendant warranted that his radium treatments would not leave a permanent scar.'' (61 Cal.App. at p. 650.) The court found that the evidence was sufficient to establish an oral contract of warranty. It is generally recognized that, where there is proof of an express contract, the physician can be held liable for a promise to effect a cure or a certain result. (See Miller, *The Contractual Liability of Physicians and Surgeons* (1953) Washington U.L.Q. 413; Louisell & Williams, *op.cit.,* par. 8.10, p. 225; *Morgan* v. *Rosenberg* (Mo. App. 1963) 370 S.W.2d 685; *Noel* v. *Proud* (1961) 189 Kan. 6 [367 P.2d 61]; *Stewart* v. *Rudner* (1957) 349 Mich. 459, 467-469 [84 N.W.2d 816, 822-823]; *Robins* v. *Finestone* (1955) 308 N.Y. 543 [127 N.E.2d 330]; *Colvin* v. *Smith* (1949) 276 App.Div. 9 [92 N.Y.S.2d 794, 795].)

"The elements of a cause of action for breach of contract are the making of the contract and its terms, plaintiff's performance, defendants' breach, and damage to plaintiff therefrom.'' (*M. G. Chamberlain & Co.* v. *Simpson, supra,* 173 Cal.App.2d 263, 274.) ▮ The allegations of the complaint have been attacked by special demurrer, which has not yet been considered by the trial court, seeking to ascertain the nature and terms of the alleged written agreement. Reference to the allegations of the complaint permits the interpretation that plaintiffs and defendants agreed in writing that the latter would sterilize Mrs. Custodio by an operative procedure, and that she agreed to pay a reasonable fee for that service. Performance by plaintiffs, other than the wife's

submitting to the operation, is not clearly alleged. Failure of performance by defendants and resulting damages are set forth. There are sufficient allegations to withstand the general demurrer, or, in any event, to warrant an opportunity to amend.[10]

*Proximate Cause*

Defendants contend that the injuries or damage, if any, suffered by plaintiffs, or either of them, were not the proximate result of any breach of duty on their part because of the intervening sexual relations between the parents. (See *Trice* v. *Southern Pac. Co.* (1916) 174 Cal. 89, 96 [161 P. 1144].)

Plaintiffs must show that their alleged injuries were caused by some breach of duty of defendants. (*Huffman* v. *Lindquist, supra,* 37 Cal.2d 465, 475-476 and 479; *Deckard* v. *Sorenson* (1960) 177 Cal.App.2d 305, 308 [2 Cal.Rptr. 121]; *Silvers* v. *Wesson* (1954) 122 Cal.App.2d 902, 903-906 [266 P.2d 169]; *Louisell & Williams, op.cit.,* par. 8.07, p. 213.) ▮ ''The law does not require that negligence of the defendant must be the sole cause of the injury complained of in order to entitle the plaintiff to damages therefor. All that is required . . . is that the negligence in question shall be *a* proximate cause of the injury. . . .'' (*Griffith* v. *Oak Ridge Oil Co.* (1923) 190 Cal. 389, 392 [212 P. 913], as quoted and applied in *Champion* v. *Bennetts* (1951) 37 Cal.2d 815, 821 [236 P.2d 155].)

▮ The general test of whether an independent intervening act, which actively operates to produce an injury, breaks the chain of causation is the foreseeability of that act. (See *Gill* v. *Epstein* (1965) 62 Cal.2d 611, 617-618 [44 Cal. Rptr. 45, 401 P.2d 397]; and 2 Witkin, Summary of Cal. Law (1960) Torts, § 289, p. 1488.) ▮ It is difficult to con-

---

[10]The court is not unmindful that the subject of this controversy has implications which may affect the manufacturer (*Gottsdanker* v. *Cutter Laboratories* (1960) 182 Cal.App.2d 602 [6 Cal.Rptr. 320, 79 A.L.R.2d 290]), the purveyors and prescribers of proprietary drugs. Reportedly the District Court of Linn County, Iowa (*Maley* v. *Armstrong,* No. 83195) on January 11, 1967 granted a directed verdict for the defendant physician for lack of proof of damages in an action predicated upon a normal but unexpected pregnancy following the prescription and use of birth control pills. The Superior Court in Pierce County, Washington (*Coloff* v. *Hi Ho Shopping Center, Inc.,* No. 168070), upheld the defendant pharmacist's contention that no damages should be allowed for the expense of the rearing of a child conceived after dehydrating pills were negligently substituted for birth control pills. The jury were permitted to consider the medical expenses in connection with the birth of the child (but not the usual pain and suffering attendant to child birth), and the damages resulting from the aggravation of the mother's preexisting varicose vein condition. A verdict of $8,000 was returned for the mother on these issues.

ceive how the very act the consequences of which the operation was designed to forestall, can be considered unforeseeable. Whether the defendants' negligence in the performance of the operation, or in failure to warn plaintiffs of its possible temporary nature, or the natural regeneration of a fallopian tube, was the sole proximate cause, or whether each was a concurring cause of the pregnancy is a matter of proof. (See *Ball* v. *Mudge* (1964) 64 Wn.2d 247, 249-250 [391 P.2d 201, 203-204.] The allegations of the complaint are sufficient to present the issue.

*Public Policy*

It is generally recognized that a sterilization operation for therapeutic purposes to protect the physical or mental health of the patient, or, in the case of a vasectomy, the wife of the patient, is not against public policy. (*Christensen* v. *Thornby* (1934) 192 Minn. 123, 125-126 [255 N.W. 620, 621-622, 93 A.L.R. 570]; and see Note, *Elective Sterilization* (1965) 113 U.Pa.L.Rev. 415, at pp. 423, 427 and 431-433; Case Note, 9 Utah L.Rev. (1965) 808, 809-810; Note (1958) 19 U. Pitt. L.Rev. 802 at p. 804; Louisell & Williams, *op.cit.* par. 19.11, p. 580; A.T.L. Seminar, Medical Malpractice (1966) 433.)

It has been suggested that such an operation for the purpose of family limitation motivated solely by personal or socioeconomic considerations is likewise not antithetical to public policy. (*Shaheen* v. *Knight* (1957) 11 Pa. D. & C.2d 41, 43-44, and see references in last citation.)

In this state, policy considerations have not been raised in those cases dealing with sterilization which have been brought to the attention of this court. (In *Kritzer* v. *Citron, supra,* 101 Cal.App.2d 33, an action for alleged unauthorized sterilization of wife, the court found sufficient evidence to show actual consent. In *Wiley* v. *Wiley* (1943) 59 Cal.App.2d 840, 842 [139 P.2d 950], an action for annulment by husband was held not defeated because he submitted to sterilization on the representation of his wife that it was necessary to protect her health. In *Bathke* v. *Rahn, supra,* 46 Cal.App.2d 694, an action for failure of vasectomy, which resulted in impairment of the health of husband and failed to achieve the therapeutic purpose of preventing wife's pregnancy, was held barred by the statute of limitations.)

Where not prohibited by statute, the matter would appear to be one of individual conscience. The question of whether the state can now control the subject may be questioned in

318

view of the fact that the giving of information, instruction and medical advice to married persons as to the means of preventing conception is now clothed in a cloak of constitutional protection. (*Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678].)

## Damages

The crux of this case is whether or not plaintiffs are precluded from showing any damage even though it be assumed that defendants were negligent, or that they made negligent or intentional misrepresentations, or that they contracted for and warranted performance which they failed to effect.

In *Christensen* v. *Thornby, supra,* 192 Minn. 123 [255 N.W. 620], the lower court had sustained a demurrer to the husband's complaint to recover $5,000 for the anxiety and expenses he experienced in connection with his wife's pregnancy and successful delivery, after he had undergone a vasectomy because of advice that it would be dangerous to her life to bear a second child. The appellate court, while stating that the lower court erred in holding that the vasectomy was against public policy, nevertheless affirmed the ruling of the lower court. The court states ''that the complaint charges no lack of skill, malpractice, or negligence in any respect in the performance of the operation, but merely seeks to recover upon the ground that the operation did not achieve the purpose sought and the results promised.'' (192 Minn. at p. 124 [255 N.W. at p. 621].) The court points out that no deceit was involved because of a lack of any allegation of fraudulent intent, and distinguished the earlier case of *Hedin* v. *Minneapolis M. & S. Institute* (discussed *infra*). (*Id.,* at p. 126 [255 N.W. at p. 622].) It also notes that, ''The plaintiff in this action does not seek to recover for breach of contract; he alleges no malpractice.'' The opinion concludes: ''The purpose of the operation was to save the wife from the hazards to her life which were incident to childbirth. It was not the alleged purpose to save the expense incident to pregnancy and delivery. The wife has survived. Instead of losing his wife, the plaintiff has been blessed with the fatherhood of another child. The expenses alleged are incident to the bearing of a child, and their avoidance is remote from the avowed purpose of the operation. As well might the plaintiff charge defendant with the cost of nurture and education of the child during its minority.'' (*Id.,* at p. 126 [255 N.W. at p. 622].)

In *Shaheen* v. *Knight, supra,* 11 Pa. D. & C.2d 41, the husband, who had submitted to vasectomy to limit the size of

his family, sued the physician "under a special contract in which defendant agreed to make him 'immediately and permanently sterile and guaranteed the results thereof.' " (11 Pa. D. &. C.2d at p. 44.) He sought recovery following the birth of his fifth child for "the additional expenses of supporting, educating and maintaining said child, . . . until the maturity of said child, . . ." (*Id.*, pp. 41-42.)

The court notes that no malpractice or deceit was charged. It concludes, as has been noted above, "We are of the opinion that a contract to sterilize a man is not void as against public policy and public morals." (*Id.*, p. 43.) It recognizes that a physician can agree to contract for a particular result, and that such a contract had been properly alleged. (*Id.*, p. 44.)

In sustaining the last of defendant's objections to the complaint, the opinion concludes: "Defendant argues, however, and pleads, that plaintiff has suffered no damage. We agree with defendant. The only damages asked are the expenses of rearing and educating the unwanted child. We are of the opinion that to allow damages for the normal birth of a normal child is foreign to the universal public sentiment of the people. . . . To allow damages in a suit such as this would mean that the physician would have to pay for the fun, joy and affection which plaintiff Shaheen will have in the rearing and educating of this, defendant's [*sic*] fifth child. Many people would be willing to support this child were they given the right of custody and adoption, but according to plaintiff's statement, plaintiff does not want such. He wants to have the child and wants the doctor to support it. In our opinion to allow such damages would be against public policy." (*Id.*, pp. 45-46.)

In *Ball* v. *Mudge, supra*, 64 Wn.2d 247 [391 P.2d 201], the husband and wife appealed from an adverse judgment entered on a jury verdict for the defendants in an action in which they sought to recover damages for the expenses of delivery of their fourth child, care, maintenance and support of the child, suffering and mental anguish of the parents, and loss of the services, society, companionship and consortium of the wife. The husband had subjected himself to a vasectomy because of the expense incident to the birth and rearing of three children, all of whom had been delivered by Caesarean section, and because of a suggestion by his wife's obstetrician that further such deliveries would be inadvisable. The wife became pregnant a year after the husband's operation, and was deliv-

ered of a normal, healthy daughter by another Caesarean section without extraordinary or permanent effect on her health.

The Washington court refused to consider the policy question raised in the earlier cases because the verdict for the defendants was sustained by the record on the issues raised. The court noted: ''There is a complete absence of evidence indicating bad faith or deceit. It, at most, indicated negligence or breach of warranty, both of which were submitted to the jury.'' (64 Wn.2d at p. 250 [391 P.2d at p. 204].) The court found that the evidence failed to reflect any accepted practice of postoperative testing after a vasectomy which would make defendant's failure to test negligent; that the evidence permitted a finding that the pregnancy resulted from recanilization which could not have been prevented by the surgeon; and that ''As reasonable persons, the jury may well have concluded that appellants suffered no damage in the birth of a normal, healthy child, whom they dearly love, would not consider placing for adoption, and 'would not sell for $50,000,' and that the cost incidental to such birth was far outweighed by the blessing of a cherished child, albeit an unwanted child at the time of conception and birth.'' (*Id.*, p. 250 [391 P.2d at p. 204].)

In *Doerr* v. *Villate* (1966) 74 Ill.App.2d 332 [220 N.E.2d 767], the facts alleged are summarized as follows: ''In the complaint the plaintiff alleged that she was married, and prior to 1959 had given birth to two children, both of whom were retarded; that in 1959, she and her husband contacted the defendant and made known to him that the plaintiff wanted to be free from any further conception and childbearing; that the defendant entered into an oral contract with her, whereby, he agreed to operate on and sterilize her husband; and that the defendant assured and warranted to the plaintiff that the operation would render her husband incapable of procreation as the result of her sexual relations with him.

''The complaint further alleged that the operation was performed; that, relying upon the assurances and warranties of the defendant, the plaintiff and her husband resumed sexual relations and as a result, a child was born who was both retarded and physically deformed; that the defendant did not perform the operation properly, as warranted, and did not use proper care and skill therein and thereby was guilty of a breach of warranty and contract; and that as a

result of such breach, she became liable for, and will continue to be liable for medical expenses and for other special care and attention necessary for the child thus born.'' (74 Ill. App.2d at pp. 334-335 [220 N.E.2d at p. 768].)

The sole question presented was whether the action was barred by the two-year statute of limitations governing injuries to the person, or maintainable within the five-year limitation for an oral contract. The court recognized ''that the same alleged malpractice may give rise to an action for breach of contract against a physician which is separate and distinct from an action for negligence in its basis of liability and rule of damages. The plaintiff here was not suing for personal injuries suffered by her as a result of the transaction complained of and it was improper to dismiss her complaint as being barred by the two-year provisions of the Statute of Limitations. The complaint alleged the breach of an oral contract in failing to sterilize plaintiff's husband as expressly promised and in failing to use proper care and skill as impliedly warranted. The allegations of the complaint were sufficient to render the five-year limitation applicable.'' (*Id.*, p. 338.)

In the absence of discussion of the policy arguments advanced in *Christensen* and *Shaheen,* the case is not authority for a contrary philosophy. It does demonstrate, however, that the birth of a child may be something less than the ''blessed event'' referred to in those cases. (See Note, U. Pitt. L.Rev., *supra,* 802, at p. 805.)

In *Milde* v. *Leigh* (1947) 75 N.D. 418 [28 N.W.2d 530, 173 A.L.R. 738] the husband sought to recover for the loss of the services and companionship of his wife, and for monies expended in her care and medical treatment, allegedly caused by the malpractice of the defendant-physician in the performance of an unsuccessful sterilization at the time of her first Caesarean delivery. It was alleged that her second pregnancy impaired her health and caused extraordinary medical expense.

In affirming the ruling of the lower court, which had sustained plaintiff's demurrer to the defense of the statute of limitations, the court distinguished the right of the wife and the right of the husband and stated: ''The negligence of the defendant in this case in the performance of the operation of plaintiff's wife was an invasion of her rights and any injury sustained by her as a result thereof constituted a tort on her

but did not constitute a tort on the husband. The actionable wrong against the plaintiff was the interference with his marital rights, depriving him of his wife's services, society and companionship, and requiring expenditures by him for her medical treatment and care. These do not constitute mere items of damages in an action for negligence; 'they are essential to the cause of action itself, which cannot arise until such consequences have followed the injury.' " (75 N.D. at p. 431 [28 N.W.2d at p. 538].) It may certainly be implied from this holding that the husband on proof of any of the theories of breach of duty on the part of defendants should recover any extraordinary if not all, of the medical expenses attendant to his wife's confinement, and as well the expenses of a sterilization operation.

In *West* v. *Underwood* (1945) 132 N.J.L. 325 [40 A.2d 610], there was evidence to show that the physician had undertaken to sterilize the wife in connection with a Caesarean delivery. The defendant failed to perform the sterilization at that time. A subsequent operation for that purpose resulted in complication which necessitated yet a third operation. The court reversed a nonsuit and stated that if it were found that the defendant had so undertaken and negligently failed to perform, the husband and wife "were entitled to recover for all pain and suffering, mental and physical, together with loss of services and any other loss or damage proximately resulting from such negligence." (132 N.J.L. at p. 326 [40 A.2d at p. 611] ; and see *Moses* v. *Miller* (1950) 202 Okla. 605 [216 P.2d 979] ; *Calabrese* v. *Bickley* (1955) 208 Misc. 407 [143 N.Y.S.2d 846], and same case (1956) 1 App. Div.2d 874 [150 N.Y.S.2d 542].)

In *Hedin* v. *Minneapolis Medical & Surgical Institute* (1895) 62 Minn. 146 [64 N.W. 158], the plaintiff on alleging and proving deceit, in that the defendants represented that they would cure an incurable condition, recovered the amount he had paid them for the alleged cure.

[17] From the foregoing it would appear that if plaintiffs establish a violation of duty by the defendants, they should at least be reimbursed for any outlay for the unsuccessful operation.

This action was filed before the delivery of the child. Plaintiffs apparently have tried to steer a course between the Scylla of limitations, and the Charybdis of prematurity. If by amendment or supplemental complaint they can show physical complications and mental, physical, and nervous pain and

suffering which the operation was designed to prevent, they should be able to recover as outlined in *West* v. *Underwood, supra.*

*Christensen* and *Shaheen* suggest that no recovery can be had for a normal delivery, or for the costs of rearing the child. It has been suggested (Note, 9 Utah L.Rev., *supra*, 808 at p. 811, fn. 14) that this policy is an application of that set forth in Restatement of Torts (1939) section 920, as follows: "Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable." In *Maben* v. *Rankin* (1961) 55 Cal.2d 139 [10 Cal.Rptr. 353, 358 P.2d 681], the court noted the applicability of the rule to one seeking to recover for unlawful detention and treatment as a mental patient. This case and the examples given in the Restatement contemplate a benefit to the interest to be protected. If the failure of the sterilization operation and the ensuing pregnancy benefited the wife's emotional and nervous makeup, and any infirmities in her kidney and bladder organs, the defendants should be able to offset it.

The mental suffering attendant to the unexpected pregnancy because of the complications which may or may not result, the complications that do result, and the delivery of a child are all foreseeable consequences of the failure of the operation. If the mother dies in childbirth from foreseeable complications of the proscribed pregnancy, the defendants may be chargeable therewith. (See *West* v. *Underwood, supra.*) Presumably the nine surviving children and the husband would be compensated in an action for wrongful death for the value of her society, comfort, care, protection and right to receive support which they lost. (2 Witkin, Summary of Cal. Law (1960) Torts, §§ 374, 415, at pp. 1577 and 1617.)

If she survives but is crippled from the same causes and no longer able to perform her maternal and conjugal duties, the physicians would have to compensate her for her injuries, and her husband for loss of her services and for medical expenses. (2 Witkin, *op.cit.*, Torts (1960) § 150, p. 1324.)

Where the mother survives without casualty there is still some loss. She must spread her society, comfort, care, protection and support over a larger group. If this change in the

324

family status can be measured economically it should be as compensable as the former losses.[11]

To say, as in *Christensen,* that the expense of bearing a child are remote from the avowed purpose of an operation undertaken for the purpose of avoiding childbearing is a *non sequitur. Shaheen* begs the question by referring to the compensation sought as ''damages for the normal birth of a normal child'' and stating that ''the physician would have to pay for the fun, joy and affection which plaintiff Shaheen will have in the rearing of this, defendant's [*sic* plaintiff's] fifth child.'' The *Doerr* case makes it apparent that the compensation is not for the so-called unwanted child or ''emotional bastard'' (see Note, 9 Utah L.Rev., *supra,* 808 at p. 812), but to replenish the family exchequer so that the new arrival will not deprive the other members of the family of what was planned as their just share of the family income.

*Christensen* and *Shaheen* are criticized for failure to allow recovery for the foreseeable consequences of the failure to effect the promised sterilization. (See *Elective Sterilization,* 113 U.Pa.L.Rev., *supra,* 415 at pp. 435-436; and Note, U. Pitt. L.Rev., *supra,* 802, 805.) The suggestion in *Shaheen* that the child be considered as worth its cost or be put out for adoption is not consistent with the very stability of the family which the same court relies on to support its views of ''universal public sentiment.''

It has been suggested that ''so long as the complaint is framed in terms of a child being unwanted and a burden to the parents, the better view would seem to be to deny the claim on grounds of public policy inasmuch as it may cause emotional injury to the child involved, it is repugnant to social ethics with respect to the family establishment, and the benefit outweighs any possible injury.'' (Note, 9 Utah L.Rev., *supra,* at p. 815.) The emotional injury to the child can be no

---

[11]The ramifications of this case also embrace the subject of ''wrongful life'' (see Notes (1965) 17 Hastings L.J. 400, and (1966) 18 Stan. L.Rev. 530), or the right of a child to recover from a tortfeasor whose conduct was a contributing cause of his conception. *Williams* v. *State* (Ct.Cl. 1965) 46 Misc.2d 824 [260 N.Y.S.2d 953], the subject of the foregoing notes, upheld the infant's cause of action for the negligence of those who permitted a sexual assault on her mother while she was confined as a mentally deficient person. It was, however, overruled on appeal (*Williams* v. *State* (1966) 25 App.Div.2d 907 [269 N.Y.S.2d 786]; see also *Zepeda* v. *Zepeda* (1963) 41 Ill.App.2d 240 [190 N.E.2d 849]; and *Gleitman* v. *Cosgrove* (N.J.Sup.Ct. 3/6/67) noted 35 L.W. 2526-2527; and cf. *Woods* v. *Lancet* (1951) 303 N.Y. 349 [102 N.E.2d 691]; and *Norman* v. *Murphy* (1954) 124 Cal.App.2d 95 [268 P.2d 178]).

greater than that to be found in many families where
"planned parenthood" has not followed the blueprint.

With fears being echoed that Malthus was indeed right,
there is some trend of change in social ethics with respect to
the family establishment. City, state and federal agencies have
instituted programs for dispensing of contraceptive informa-
tion with a view toward economic betterment of segments of
the population.[12]

One cannot categorically say whether the 10th arrival in the
Custodio family will be more emotionally upset if he arrives
in an environment where each of the other members of the
family must contribute to his support, or whether he will have
a happier and more well-adjusted life if he brings with him
the wherewithal to make it possible.

On the present state of the record it cannot be ascertained
to what extent plaintiffs, if they establish a breach of duty by
defendants, are entitled to damages. It is clear that if success-
ful on the issue of liability, they have established a right to
more than nominal damages.

If tortious conduct is established, the law provides: "For
the breach of an obligation not arising from contract, the
measure of damages, except where otherwise expressly pro-
vided by this code, is the amount which will compensate for
all the detriment proximately caused thereby, whether it
could have been anticipated or not." (Civ. Code, § 3333; and
see *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 435
[58 Cal.Rptr. 13, 426 P.2d 173]; and *Gill* v. *Epstein* (1965)
62 Cal.2d 611, 617-618 [44 Cal.Rptr. 45, 401 P.2d 397].)

For breach of contract it is provided: "For the breach of
an obligation arising from contract, the measure of damages,
except where otherwise expressly provided by this code, is the
amount which will compensate the party aggrieved for all the
detriment proximately caused thereby, or which, in the ordi-
nary course of things, would be likely to result therefrom."
(Civ. Code, § 3300; and see *Mack* v. *Hugh W. Comstock
Associates* (1964) 225 Cal.App.2d 583, 678-688 [37 Cal.Rptr.
466]; and cf. *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d
425, 435; *Acadia, Cal., Ltd.* v. *Herbert* (1960) 54 Cal.2d

---

[12]See United States Department of Health Education and Welfare
pamphlets: Family Planning: One Local Public Welfare Agency's
Approach (1966); Report on Family Planning (Sept. 1966); White-
Non-white Differences in Family Planning in the United States, reprint
from Health, Education and Welfare Indicators (Feb. 1966) pp. 1-9;
Family Planning: One Aspect of Freedom to Choose, reprint from Health,
Education and Welfare Indicators (June 1966) pp. 1-16.

328, 337-338 [5 Cal.Rptr. 686, 353 P.2d 294]; and *Stewart* v. *Rudner* (1957) 349 Mich. 459, 469-472 [84 N.W.2d 816, 823-825].)

The propriety of further damages must be established under the foregoing criteria as the facts may be developed. Any disputed issues may be preserved by the instructions or by special verdict,[13] and then can be ruled on upon the entire record.

The attempted appeal from the order of March 26, 1965 is dismissed. The judgment is reversed with directions to the trial court to overrule the general demurrers, and to rule on the points presented by the special demurrers. Appellant shall recover costs on appeal.

Molinari, P. J., and Elkington, J., concurred.

Defendants' petition for a rehearing was denied June 13, 1967, and the following opinion was then rendered:

THE COURT.—By petition for rehearing defendants for the first time refer to the cases on "wrongful life" (see text, fn. 11), and assert that the opinion errs in holding that the very existence of life itself can amount to wrong or injury. The opinion speaks for itself. It demonstrates that the allegations of the complaint set forth an actionable wrong on the several theories set forth therein. We adhere to our determination that resolution of the controversy over one element of the damages allegedly recoverable for that wrong should await proof of the breach of duty and at least an offer to prove the alleged damages. The complaint was filed prior to delivery of any child, and supports proof of the existence of actual and potential damages aside from the care and support of a normal child. What facts may be pleaded and proved in connection with any amended or supplemental complaint can only be in the realm of conjecture on the record before us. (See Code Civ. Proc., §§ 464 and 473; *Radar* v. *Rogers* (1957) 49 Cal.2d 243, 247 [317 P.2d 17]; *Davis* v. *Stroud* (1942) 52 Cal.App.2d 308, 315 [126 P.2d 409]; *Stohlman* v. *Martin* (1915) 28 Cal.App. 338, 346-347 [152 P. 319].)

The petition for rehearing is denied.

Respondents' petition for a hearing by the Supreme Court was denied July 19, 1967.

---

[13]See *Clark* v. *Gibbons* (1967) 66 Cal.2d 399 [58 Cal.Rptr. 125, 426 P.2d 525], Tobriner, J., concurring opinion, page 414 and text.