[L. A. No. 25948.   In Bank.   Jan. 10, 1961.]

DORIS ASKEW MABEN, Respondent, v. J. H. RANKIN et al., Appellants.

Callaway, Kirtland & Packard and Henry E. Kappler for Appellants.

Pat A. McCormick and Floyd H. Norris for Respondent.

GIBSON, C. J.—Plaintiff recovered a judgment of $78,000 for false imprisonment and assault and battery against Dr. J. H. Rankin, a psychiatrist, and the Beverly Hills Medical Clinic, a partnership of physicians of which Dr. Rankin was a member.

The evidence established without conflict that Dr. Rankin caused plaintiff to be taken, without her consent, to the psychiatric ward of St. John's Hospital, a private institution, and to be detained there while he gave her electroshock treatments. Plaintiff testified that she was examined by Dr. Rankin at her husband's request, that she was not mentally ill but was upset because of infidelity and other objectionable conduct on the part of her husband, that she refused to be hospitalized but that Dr. Rankin forcibly administered an injection and that the next thing she remembered was that a week later she found herself in the hospital, where she remained against her will for 15 days. There was also expert testimony that she had not been mentally ill.

Dr. Rankin testified that his observation of plaintiff's symptoms, together with information he received from her husband and other doctors who had previously examined her, showed that she was mentally ill and needed hospital care and electroshock treatments and that she was not competent to exercise the best judgment for her own welfare and was potentially dangerous to her husband and herself. The testimony as to plaintiff's mental condition was corroborated by other witnesses. There was also evidence that plaintiff's husband consented to her confinement and treatment in St. John's Hospital.

The case was submitted to the jury on the theory that if plaintiff did not consent to hospitalization, the conduct complained of was tortious unless one of two defenses was proved, namely, consent by plaintiff's husband or an emergency war-

ranting the conduct without consent on the part of anyone. In this connection the jury was instructed that the burden was on defendants to prove that the husband consented in good faith on plaintiff's behalf and for her benefit to the restraint and treatment. This placed an excessive burden of proof on defendants with respect to the husband's good faith. A doctor is not required to investigate whether the consenting husband has an ulterior motive in the absence of circumstances which put him on notice that the husband is acting in bad faith. The burden of proving that the doctor was put on notice is on the plaintiff. Good faith is presumed. (*Cuenin* v. *Lakin*, 146 Cal.App.2d 855, 858 [304 P.2d 157]; *Roscoe Moss Co.* v. *Jenkins*, 55 Cal.App.2d 369, 378 [130 P.2d 477]; *Klemmer* v. *Klemmer*, 42 Cal.App. 618, 626 [187 P. 85]; *Janise* v. *Bryan*, 89 Cal.App.2d Supp. 933, 943 [201 P.2d 466]; see Code Civ. Proc., § 1963, subds. 1, 19; 31 C.J.S. 745.)

Plaintiff argues that this error and others complained of by defendants were not prejudicial because there was no evidence that defendants complied with the provisions of the Welfare and Institutions Code relating to the involuntary hospitalization in private institutions of mentally ill persons without judicial proceedings for commitment. The trial court, contrary to plaintiff's position, ruled that these provisions had no applicability here. The code provides that no person may be involuntarily taken or admitted to a private mental institution without a written statement by at least one licensed physician who has no financial connection with the institution and who has made a mental examination of the patient within three days of admission; the statement must be in certificate form and must set forth that the examination was made and that the patient should be admitted to the institution for care or treatment. (§§ 5750, 5750.2.) It was not shown at the trial that the certificate required for admission was executed, and at oral argument before this court defendants' attorney conceded that there was none.

The code also provides that the patient must be permitted to notify others in writing of his detention, and at any time after admission he, a relative or friend may, by filing a written request with the institution, bring about a court hearing, at which he or his attorney must be present, to determine whether he is mentally ill and in need of supervision, care or treatment in the institution. (§§ 5750.1, 5751, 5752.) A person may not be detained in such an institution for more than 90 days unless he has filed a request to remain there or unless a court has

issued an order for detention in connection with the proceedings to determine whether he is mentally ill or unless the institution has received a written application from a friend or relative to retain him there for further care or treatment, accompanied by certificates executed by two doctors. (§ 5750.2.) A physician who in good faith executes a certificate required by the code shall not be liable in damages to the person or his heirs, executors or administrators, for false imprisonment or otherwise, provided, however, that the physician shall not be exempt from liability for negligence in the care or treatment of the person. (§ 5750.3.)

■ Defendants assert that the provisions of sections 5750 and 5750.2, requiring a certificate for admission, do not apply because St. John's Hospital is a charitable institution. We do not agree. There is nothing in the code to indicate that hospitalization in a charitable mental institution is not subject to the statutory requirement. ■ The trial court concluded that the provisions apply only to institutions, not to the "committing physician." Although the requirement is set forth in part 2 of division VI of the Welfare and Institutions Code, entitled "Private Institutions," section 5750 expressly provides that no person shall be involuntarily "committed or taken" to a private mental institution "by any person" without the certificate, and section 5750.3, which relates to the extent of liability where there has been compliance, deals specifically with the liability of doctors as well as that of institutions. We are satisfied that the provisions are applicable.

■ In a brief filed after oral argument defendants contend that there was substantial compliance with the certificate requirement and call our attention to two hospital forms filled out by Dr. Rankin. These documents do not show substantial compliance. One of them, a "Summary Sheet" containing Dr. Rankin's final diagnosis, is dated two weeks after the day of plaintiff's admission to the hospital, and the other, entitled "Personal History" and setting forth plaintiff's symptoms over a period of many months prior to her admission, is undated. The documents do not, as required by the code, show that Dr. Rankin examined plaintiff within three days before her admission or at all and do not contain any statement by the doctor that she should be admitted to a private mental institution for care or treatment.

■ It does not follow, however, that we may disregard the effect of the erroneous instruction, which imposed an ex-

cessive burden of proof upon defendants. The jury was not given an opportunity to consider the effect of the failure to execute and present a certificate for admission, and we cannot say that the same amount of damages would have been awarded if the case had been tried on the proper theory and a violation of the statutory requirement had been the basis of the award.

In the event the case is retried, consideration of the applicability of the following rules may be helpful. ▆▆▆ The involuntary hospitalization of a person in a mental institution in violation of the statute constitutes false imprisonment. (*Peterson* v. *Cruickshank*, 144 Cal.App.2d 148, 174 [300 P.2d 915] ; cf. *Jillson* v. *Caprio*, 181 F.2d 523, 524; *Warner* v. *State*, 297 N.Y. 395 [79 N.E.2d 459, 463-464] ; *Frey* v. *Barr*, 28 Pa. Dist. 570.) ▆▆▆ Insofar as force is used to accomplish the unlawful detention, there is also liability for assault and battery. However, the use of force in the treatment of the patient so hospitalized may not constitute assault and battery in all circumstances. The code does not specifically require a certificate for the treatment of a mental patient, and there is not necessarily such a close relationship between detention and treatment that any treatment, even though in itself proper, becomes unlawful merely because it is given during an unlawful detention. ▆▆▆ In determining the damages suffered as a result of a tortious act, consideration may be given, where equitable, to the value of any special benefit conferred by that act to the interest which was harmed. (Rest., Torts, § 920; *Hicks* v. *Drew*, 117 Cal. 305, 314-315 [49 P. 189] ; *Mohr* v. *Williams*, 95 Minn. 261 [104 N.W. 12, 16] [overruled as to another point in *Genzel* v. *Halvorson*, 248 Minn. 527 [80 N.W. 2d 854, 859]] ; cf. *Estate of de Laveaga*, 50 Cal.2d 480, 488 [326 P.2d 129].) Anything to the contrary in *Corey* v. *Struve*, 170 Cal. 170 [149 P. 48], is disapproved.

The judgment is reversed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.