[No. B040293. Second Dist., Div. Three. May 30, 1990.]

TONI JACKSON, Plaintiff and Appellant, v.
CEDARS-SINAI MEDICAL CENTER, Defendant and Respondent.

COUNSEL

Norman F. Taylor and H. Peter Young for Plaintiff and Appellant.

Arthur J. Rosenberg as Amicus Curiae on behalf of Plaintiff and Appellant.

Rushfeldt, Shelley & Drake, Linda C. Miller, Horvitz & Levy, David S. Ettinger and Lisa Perrochet for Defendant and Respondent.

OPINION

CROSKEY, J.—Plaintiff and appellant Toni Jackson (Jackson) appeals from the dismissal of her complaint following the sustaining of a demurrer without leave to amend in favor of defendant and respondent Cedars-Sinai Medical Center (the hospital). We find the complaint, which alleges that the hospital violated certain clauses of the Lanterman-Petris-Short Act (the LPS Act) (Welf. & Inst. Code, § 5000 et seq.) and the federal Civil Rights Act (42 U.S.C. § 1983), barred by the applicable statute of limitations, Code of Civil Procedure section 340, subdivision (3).[1] We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Jackson's first amended complaint alleges the following facts which, for purposes of this appeal, we accept as true. (*Ross* v. *Forest Lawn Memorial Park* (1984) 153 Cal.App.3d 988, 991 [203 Cal.Rptr. 468, 42 A.L.R.4th 1049].) The hospital is licensed by the State Department of Mental Health and authorized by the Los Angeles County Department of Mental Health to detain persons in its psychiatric unit pursuant to Welfare and Institutions Code section 5150.[2] On July 21, 1983, a Beverly Hills police officer brought Jackson to the hospital for, as quoted in the complaint, " 'lying in the park and giggling inappropriately.' " An unidentified staff member ordered Jackson's involuntary detention on the ground that she was a danger to herself. On July 25, 1983, the hospital placed Jackson on a 14-day hold which was discontinued on July 28, whereupon she became a voluntary patient. She then invoked her right to leave the hospital and apparently left that same day, July 28.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] That section provides, inter alia, that a person who, as a result of mental disorder, is a danger to others or to himself or herself, or is gravely disabled, may, upon probable cause, be taken into custody by a peace officer and placed in a facility approved by the state and designated by the county as a facility for 72-hour treatment and evaluation.

Three years later, on July 28, 1986, Jackson filed suit against the hospital. The original complaint alleged causes of action for false imprisonment, assault and battery, and intentional infliction of emotional distress, as well as violations of the LPS Act and 42 U.S.C. section 1983. The hospital's demurrer was sustained without leave to amend on the ground that no opposition to the demurrer was filed. Jackson's subsequent motion to vacate the order was granted, and she was given leave to amend the complaint.

The first amended complaint asserted only statutory causes of action, as stated above. The first one, brought pursuant to Welfare and Institutions Code section 5150 (see footnote 2, *ante*), alleged that the hospital detained her without cause to believe that she was a danger to herself or others and, as a result, she was "hurt and injured in her health, strength and activity, sustaining injury to her nervous system and person, all of which injuries have caused . . . great mental, physical and nervous pain and suffering."

The second cause of action, brought pursuant to Welfare and Institutions Code section 5250,[3] alleged that the hospital failed to properly certify Jackson for a 14-day intensive treatment hold and that she was not a danger to herself. The damages stated under the first cause of action were incorporated by reference.

The third and fourth causes of action were brought pursuant to Welfare and Institutions Code section 5325.1[4] and alleged that the hospital placed

---

[3] Pursuant to Welfare and Institutions Code section 5250, one who is detained for 72 hours under Welfare and Institutions Code section 5150 may be certified for not more than 14 days of intensive treatment if:

"(a) The professional staff of the agency or facility providing evaluation services has analyzed the person's condition and has found the person is . . . a danger to others, or to himself or herself, or gravely disabled.

"(b) The facility providing intensive treatment is designated by the county to provide intensive treatment, and agrees to admit the person. . . .

"(c) The person has been advised of the need for, but has not been willing to or able to accept, treatment on a voluntary basis."

A 1989 amendment of Welfare and Institutions Code section 5250, which added subdivision (d), has no bearing on this case. (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828 [114 Cal.Rptr. 589, 523 P.2d 629].)

[4] Welfare and Institutions Code Section 5325.1 provides in pertinent part: "Persons with mental illness have the same legal rights and responsibilities guaranteed all other persons by the Federal Constitution and laws and the Constitution and laws of the State of California unless specifically limited by federal or state law or regulations. . . .

"It is the intent of the legislature that persons with mental illness shall have rights including, but not limited to, the following:

"(a) A right to treatment services which promote the potential of the person to function independently. Treatment should be provided in ways that are least restrictive of the personal liberty of the individual.

"(b) A right to dignity, privacy, and humane care.

"(c) A right to be free from harm, including unnecessary or excessive physical restraint, isolation, medication, abuse, or neglect. Medication shall not be used as punishment, for the

Jackson in seclusion and in restraints, and forced her to submit to drug therapy against her will. It was alleged in the fourth cause of action that the drug therapy also violated Welfare and Institutions Code section 5326.2.[5] As a result, she "suffered loss of income." The final cause of action was brought under 42 U.S.C. section 1983.[6]

The hospital demurred on several grounds, one of which was that the statutes of limitations for both the state and federal statutes had run. The demurrer was sustained without leave to amend on the statute of limitations ground as to the causes of action brought under the LPS Act, and on the ground that the hospital was not within the "color of law" for purposes of the federal statute. Jackson's suit was dismissed.

## APPELLANT'S CONTENTION

Jackson contends that (1) the hospital was acting within the color of state law when it detained her, (2) her stated causes of action were timely filed, and (3) she has a private right of action under the LPS Act.[7]

## DISCUSSION

1. *The Statute of Limitations for the LPS Act Causes of Action.*

Jackson contends that a three-year statute of limitations applies to the causes of action brought under the LPS Act because it creates new rights for the mentally ill and those detained on the ground of mental illness. She argues that the applicable statute is section 338, subdivision (a), which provides that "[a]n action upon a liability created by statute" must be brought within three years. The hospital contends that despite Jackson's citation to the Welfare and Institutions Code in her complaint, she seeks

---

convenience of staff, as a substitute for program, or in quantities that interfere with the treatment program. . . ."

[5] Welfare and Institutions Code section 5326.2 lists the information that must be given to a patient for that person to give his or her voluntary informed consent.

[6] 42 U.S.C 1983 provides in pertinent part: "Every person who, under color of any statute . . . of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[7] Because we affirm the dismissal on the timeliness issue as to all causes of action, which we are bound to do even though the trial court did not sustain the demurrer as to the federal cause of action on the statute of limitations ground (*D'Amico* v. *Board of Med. Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Schultz* v. *County of Contra Costa* (1984) 157 Cal.App.3d 242, 248 [203 Cal.Rptr. 760], disagreed with on another ground in *Craland, Inc.* v. *State of California* (1989) 214 Cal.App.3d 1400, 1407 [263 Cal.Rptr. 255]), we need not reach the other issues raised by Jackson.

damages for personal injury; her lawsuit sounds in tort; and, therefore, the one-year statute of limitations for personal injuries (§ 340, subd. (3))[8] applies. The question appears to be one of first impression.[9]

■ A cause of action is based upon a liability created by statute " 'only where the liability is embodied in a statutory provision *and* was of a type which did not exist at common law.' " (1 Witkin, Cal. Procedure (1954) Actions, § 146, p. 654 (now 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 457, p. 488), quoted in *People* v. *Wilson* (1966) 240 Cal.App.2d 574, 576 [49 Cal.Rptr. 792].) ■ Jackson argues vigorously that the procedural safeguards created by the LPS Act establish newly created rights. Though the aspects of the LPS Act Jackson relies on in her complaint clearly refined the law with respect to involuntary mental patients, we do not find that the

---

[8] Pursuant to section 340, subdivision (3), "An action for libel, slander, assault, battery, false imprisonment, . . . or for injury to . . . one caused by the wrongful act or neglect of another . . ." must be brought within one year.

[9] The cases analyzing section 338 in light of section 340 generally fall into two types, both of which are distinguishable from the case presented here.

One set of cases involves suits brought by employers or their insurers pursuant to Labor Code section 3852 against third party tortfeasors to recover the benefits paid to employees for negligence caused by the third party. (See, e.g., *Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 785 [264 P.2d 5, 41 A.L.R.2d 1037]; *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862 [140 Cal.Rptr. 638, 568 P.2d 363]; *Liberty Mutual Ins. Co.* v. *Fabian* (1964) 228 Cal.App.2d 427 [39 Cal.Rptr. 570].) In each case it was asserted that the plaintiff's right to recover was a right created by statute and that the applicable limitations statute was Code of Civil Procedure section 338. Even assuming the validity of that assertion, the *Aetna* court held, the cause of action brought against the third party, "whether prosecuted by the employee personally or by his employer or its insurance carrier on his behalf, is solely one in tort for personal injuries arising out of the negligence of the third party tort feasor . . . . No matter who may be the party plaintiff, the cause of action is one within the express terms of subdivision 3 of section 340 of the Code of Civil Procedure." (41 Cal.2d at p. 787.)

The issue has also been addressed in suits against vehicle owners for damages caused by a person driving with the owner's permission. (See, e.g., *Franceschi* v. *Scott* (1935) 7 Cal.App.2d 494 [46 P.2d 764]; *Sullivan* v. *Wright* (1954) 124 Cal.App.2d 836 [269 P.2d 671].) Those cases hold that the fact that a statute imposes liability does not change the nature of the suit. "The owner's liability . . . is a liability for imputed negligence arising from his permission to another, express or implied, to operate the car causing the injury. The cause of action is strictly and solely one in tort for injuries arising out of the negligence of the operator . . . . And no matter what form of language we use, the cause of action is one 'for the injury to . . . one caused by the wrongful act or neglect of another' within the express terms of subdivision 3 of section 340." (*Franceschi* v. *Scott, supra,* 7 Cal.App.2d at p. 495.)

Obviously, the rules that have been established by these section 338 cases offer some guidance for deciding the case before us. Since it involves neither a statute that permits subrogation nor one that imputes liability, however, we find the analyses of the foregoing cases have limited value in answering the question presented in this case.

Brief mention should be given to another type of case cited to us that considered the applicability of section 338, where the question was not whether liability was created by statute or by tort, but whether it was created by statute or by contract. (See, e.g., *Winick Corp.* v. *General Ins. Co* (1986) 187 Cal.App.3d 142, 145 [231 Cal.Rptr. 606], and cases cited there.) Given that factual distinction, *Winick,* like the cases cited above, does not supply the answer to the question we address.

sections before us created new rights such that her causes of action are statutory in nature.

"The long-established common-law rule is that a person actually insane may be arrested and detained by any interested party, without a warrant or legal process first issuing in a judicial or quasi-judicial proceeding to have the person declared a lunatic or confined as an insane person, when an arrest is necessary to prevent immediate bodily injury to the arrestee or another." (Annot., Insane Person—Arrest and Detention (1963) 92 A.L.R. 2d 570, 572-573.) However, the "logical converse" of that principle is that "if a person summarily arrested as one dangerously insane was actually sane, the arrest is illegal, with whatever legal consequences that may involve, usually liability of the arrester to the arrestee for false arrest or false imprisonment." (*Id.* at p. 577.) The first case cited to support the latter statement is *Collins* v. *Jones* (1933) 131 Cal.App. 747, 750 [22 P.2d 39], which affirmed a damage award for false imprisonment to a plaintiff who had spent four days in a mental ward even though there was "no evidence nor claim that she . . . was disordered in mind to an extent that would or might render her being at large dangerous to the person or property or health of herself or others . . . ."

Though the incident which gave rise to the action in *Collins* was very different from that alleged in the Jackson complaint, in other respects the cases are similar. Jackson's suit is also based on detention without cause to believe that she was a danger to herself or others. The fact that the LPS Act established particular safeguards that require certification of the fact that she was a danger to herself or others to extend her confinement beyond the first 72 hours, and that she alleges that the hospital failed to properly certify her, does not transform the action into one created by statute. Such allegation may make it easier for a plaintiff to prove that she or he was not a danger and therefore that the defendant had no cause to continue the hold beyond 72 hours, but the essence of the complaint is still unlawful detention.

Because the common law recognized that one wrongfully taken into custody on psychiatric grounds had an actionable wrong, we find that the sections of the LPS Act relied on here did not create a new cause of action for purposes of section 338. We find, therefore, that Jackson's suit is barred by application of section 340, subdivision (3).

Our conclusion is supported by prior case law. In 1937, the California Legislature enacted the Welfare and Institutions Code to provide "for protection, care, and assistance to children, aged persons, and others specially in need thereof . . . ." (Stats. 1937, ch. 369, p. 1005.) In 1967 that code was

amended to include the forerunner of the LPS Act, former Welfare and Institutions Code section 5000 et seq. (See Comments and Historical Note to Welf. & Inst. Code, Div. 5, Community Mental Health Services, immediately preceding § 5000.) In *Maben* v. *Rankin* (1961) 55 Cal.2d 139 [10 Cal.Rptr. 353, 358 P.2d 681], the Supreme Court interpreted the former statutory scheme and held that the involuntary hospitalization in a mental institution *"in violation of the statute* constitutes false imprisonment." (*Id.* at p. 144, citing *Peterson* v. *Cruickshank* (1956) 144 Cal.App.2d 148, 174 [300 P.2d 915], italics added.) The *Maben* court held, moreover, that the sections of the code requiring a physician to certify that the patient should be admitted to the institution were applicable to a suit for false imprisonment, and that the trier of fact should be given an opportunity to consider the effect of the absence of such certificate on the plaintiff's case. (55 Cal.2d at pp. 142-144.) In effect, the court found that the legislation made specific the already-acknowledged duties doctors and hospitals owe to mental patients. This view squares with our own. The *Maben* case supports our holding that the LPS Act did not create liability for wrongfully admitting mental patients, and that the one-year statute of limitations applies.

The language of section 340, subdivision (3) provides further support. It states that the one-year limitation applies to actions "for injury to . . . one caused by the wrongful act or neglect of another." That section has been interpreted to be a "special statute controlling the time within which *any action* covering such injury may be commenced, and it prevails over the general statute applicable to actions based upon a 'liability created by statute.' [Citation]." (*Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co., supra,* 41 Cal.2d at p. 787, italics added. See also *Pritchard* v. *Sharp* (1974) 41 Cal.App.3d 530, 531 [116 Cal.Rptr. 9].) Thus, both the statutes cited by the parties lead to the conclusion that the trial court's ruling was correct.

Jackson relies on *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706 [152 Cal Rptr. 65], as the case which demonstrates that section 338, subdivision (a) applies. *Rossiter* held that section 338 applied to causes of action filed pursuant to the federal Civil Rights Act, 42 U.S.C. section 1983. (*Id.* at p. 717.) Jackson acknowledges that *Rossiter* has been overruled on that point by the United States Supreme Court (see post, section 2), but suggests that the *Rossiter* analysis should be adopted here. Because the court's analysis focused for the most part on federal cases interpreting 42 U.S.C. 1983, which have also been overruled by the later United States Supreme Court cases, and did not include any California case addressing the issue of whether the causes of action alleged by the plaintiff existed at common law, we find the *Rossiter* analysis has nothing to offer us and decline to follow it.

With respect to the allegations of excessive physical restraint and drug therapy, we believe the foregoing analysis is fully applicable. (See *Maben* v.

*Rankin, supra,* 55 Cal.2d at p. 144, holding that the use of force to accomplish an unlawful detention can give rise to liability for assault and battery.)

2. *The Statute of Limitations for the Federal Statutory Cause of Action.*

■ The United States Supreme Court has held that an action brought pursuant to 42 U.S.C. section 1983 is a personal injury action, and that the appropriate statute of limitations is the statute of limitations for personal injury causes of action in the particular state in which the case is filed. (*Wilson v. Garcia* (1985) 471 U.S. 261, 275-276 [85 L.Ed.2d 254, 266, 105 S.Ct. 1938].) ■ Where the cause of action arose prior to *Wilson,* the applicable statute of limitations is "either (1) the pre-*Wilson* period, commencing at the time the cause of action arises, or (2) the post-*Wilson* period, commencing with the *Wilson* decision, *whichever expires first.*" (*Usher v. City of Los Angeles* (1987) 828 F.2d 556, 561, italics added.)

The pre-*Wilson* statute of limitations for a 42 U.S.C. section 1983 claim filed in California was three years. (*Rossiter v. Benoit, supra,* 88 Cal.App.3d 706, 717.) Applying the pre-*Wilson* formula, Jackson had until July 1986 to file her suit. Under *Wilson,* this case is controlled by California's one-year statute of limitations for personal injury. *Wilson* was decided in April 1985. Since, as stated in *Usher,* the earlier expiration date is to be applied, Jackson had one year, or until April 1986, to file under the post-*Wilson* formula. As Jackson filed the action against the hospital after April 1986, the federal civil rights cause of action is time barred.

Jackson contends that a recent United States Supreme Court case, *Owen v. Okure* (1989) 488 U.S. 235 [102 L.Ed.2d 594, 109 S.Ct. 573], "wrought a major change" in the law and rendered *Wilson* and *Usher* "inoperable." We find, however, that *Owens* is a clarification of *Wilson* and that the two opinions are completely consistent.

The question *Owens* presented was whether federal courts should look to state statutes of limitations for intentional torts to determine which statute of limitations applies for a federal civil rights cause of action. The court reaffirmed the *Wilson* holding, and stated that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions. [Footnote omitted.]" (488 U.S. at p. 250 [102 L.Ed.2d at p. 606, 109 S.Ct. at p. 582].) It is beyond argument that in California the general or residual statute for personal injury actions is section 340. Jackson's contention that *Owens* requires us to apply the California residual

limitations provision, section 343[10] is in direct contravention of *Owens*. The Supreme Court stated: "Courts should resort to residual statutes of limitations only where state law provides multiple statutes of limitations for personal injury actions and the residual one embraces, either explicitly or by judicial construction, unspecified *personal injury* actions. [Citations.]" (488 U.S. at p. 250, fn. 12 [102 L.Ed. 2d at p. 606, fn. 12, 109 S.Ct. at p. 582, fn. 12], italics added.) Section 343 does not explicitly include personal injuries actions, nor has Jackson cited a case which interprets section 343 to do so. The cases cited by Jackson which have applied section 343 are not personal injury actions, and they have no bearing on this case.

CONCLUSION

The judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 1990.

---

[10] "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." (§ 343.)