[No. H014038. Sixth Dist. June 26, 1996.]

JUAN J. BRIANO et al., Plaintiffs and Respondents, v.
MARCO RUBIO, Defendant and Appellant.

COUNSEL

Haselton & Haselton, Joseph G. Haselton and Britt D. L. Haselton for Defendant and Appellant.

Grunsky, Ebey, Farrar & Howell, Thomas N. Griffin and Deborah Mall for Plaintiffs and Respondents.

OPINION

ELIA, J.—Minority shareholders brought individual and shareholder's derivative causes of action against the corporation's directors and majority shareholders. After a court trial, judgment was entered in favor of the minority shareholders (hereafter respondents). Marco Rubio, one of the directors/majority shareholders, appeals. Among other things, he argues that respondents' breach of fiduciary duty cause of action was time-barred under Code of Civil Procedure section 359. For reasons we shall explain, we hold that section 359 is inapplicable. We will therefore affirm the judgment.

*Facts and Procedural Background*

In 1975, respondents invested in Mercantile Mexicana Company. Each respondent received approximately 100 shares of common stock. Mercantile

Mexicana used the investments to purchase a block of real estate in Pajaro, California.

Mercantile Mexicana was formed at the direction of Manuel Cahero. He located the corporation's property and negotiated the loan. Rosalio Calpo drafted the articles of incorporation. According to Calpo, Cahero was interested in forming a corporation that acted as a type of "co-op organization, wherein a lot of people with not so much savings could form together and buy commercial property right down in [the] Pajaro area, north Monterey County." Cahero envisioned that each person would be "equal." Respondents testified that it was the shareholders' understanding that ownership was to be kept among all shareholders. All shareholders would be equal and one shareholder would not "become too strong."

On April 9, 1975, the articles of incorporation were filed. Article 7 provided, "Each shareholder shall be entitled to full preemptive rights to subscribe to, purchase and acquire any share which may be issued subsequent to the original issue in the same proportion, ratio or fractional amount as the number of shares owned and held by such shareholder bears to the total number of shares issued and outstanding immediately prior to such new issue and sale and held by shareholders who elect to exercise their right to subscribe to, purchase and acquire additional shares."

Article 8 provided, "In case any shareholder desires to sell his share or shares of the stock of this corporation, he shall first offer them for sale to the remaining stockholders of the corporation at book value, including good will. Any sale or attempted sale in violation of this provision shall be null and void. A stockholder desiring to sell his said share or shares shall file notice in writing of his intention with the secretary of the corporation, and unless one or more of the other shareholders shall exercise their right to purchase as aforesaid within 30 days thereafter, they shall be deemed to have waived their privilege of purchasing, and he be at liberty to sell to anyone else."

Rubio signed the articles of incorporation, and also served as director and treasurer of the corporation. Initially, each shareholder was permitted to purchase only 100 shares. However, in 1979, Rubio acquired additional shares. Rubio purchased 100 shares from Manual Cahero. It was Cahero's understanding that Rubio represented the corporation. Cahero believed the shares would be retired by the corporation—not purchased by Rubio. Cahero assumed Rubio would inform the other shareholders that the shares were for sale as required by the articles of incorporation.

Before Rubio purchased the shares, he consulted with Calpo. Calpo told Rubio that he was required to offer the shares to the other shareholders in

proportion to their interests pursuant to articles 7 and 8 of the articles of incorporation. Rubio disregarded Calpo's advice.

Rubio purchased additional shares. He purchased 100 shares from Augustin Herrera, 100 shares from Javier Gonzales, 50 shares from Manuel Benitiz, 100 shares from Patricio Marquez, 100 shares from Raul Sotomayor, and 100 shares from Manual Cahero, Jr. Rubio also purchased 50 shares from Fidela Salas, 100 shares from Jose and Maria Flores, and 50 shares from Angela Garcia.

After acquiring these shares, Rubio was majority shareholder, property manager, and in sole control of the corporate checkbooks in his capacity as corporate treasurer.

Rubio testified that he did not inform the other shareholders that he was purchasing the shares prior to or at the time of purchase. Rubio testified that he divulged the purchases at the July 1, 1980, board of directors' meeting. Rubio alleged that respondent Juan Briano was also present at the July 1, 1980 board of directors' meeting. Briano denied that notice of the share purchase was given at the meeting. He claimed that the defendants altered the minutes of the meeting. At trial, there was testimony that the defendants had in fact altered the minutes after the meetings, and had added and omitted items to the English translation of the minutes.

In 1981 or thereafter, Rubio told respondents that the shares were "frozen." According to respondents, Rubio stated that additional shares could not be purchased. There was evidence that the shares were "frozen" since approximately 1981.

Respondents testified that they did not know Rubio purchased additional shares until late 1989 or early 1990. The corporation's secretary confirmed that he did not notify the shareholders of Rubio's purchases of additional shares of stock.

Rubio served as the corporation's property manager. He was paid 8 percent of the rents collected. One of Rubio's tasks was to lease an apartment owned by the corporation. Rubio would then be compensated by an 8 percent commission on the apartment rental.

Rubio rented the apartment from the corporation at a lower rent, and subleased it at a higher rent. He made a monthly profit of $300 from September 1990 to January 1991. Rubio profited in the amount of $250 per month from February 1990 to June 1994. He also collected an 8 percent commission for renting the apartment to himself.

At a November 9, 1990 board of directors' meeting, Rubio, Martin Gonzales, and Rudy Maldonado voted to award themselves a retroactive payment of fees for acting as secretary, treasurer, and president of the board of directors. The amount paid to Rubio for his services as treasurer was later calculated to be $8,100. However, there was evidence that Rubio had previously been compensated for his services as treasurer. Pursuant to the July 1, 1980, minutes of the board of directors, the secretary, treasurer, and manager were to be paid 2½ percent of the rents collected. The minutes from the September 9, 1987, board of directors' meeting show that the directors voted to pay Rubio for acting as treasurer beginning on that date.

In 1991, respondents filed suit. In their complaint, they asserted causes of action for (1) violation of the articles of incorporation; (2) negligence; (3) breach of fiduciary duty against the directors and officers; (4) breach of fiduciary duty as majority shareholders; (5) a shareholder's derivative action; and also (6) declaratory relief.

After a court trial, judgment was entered in favor of respondents. The trial court found that Rubio, Moreno, and Maldonado were negligent, violated the articles of incorporation and breached the director's fiduciary duty to the corporation and minority shareholders when they acquired additional shares of stock.

The trial court also found that Rubio breached his fiduciary duty to the corporation and minority shareholders by usurping a corporate opportunity and renting an apartment at a higher rate of rent and paying himself commissions on the rent. The court ordered Rubio to pay damages of $11,750.

The trial court found that Rubio, Gonzales, and Maldonado breached their fiduciary duties to the corporation and minority shareholders by receiving a retroactive payment of fees from the corporation. The trial court ordered that those fees be remitted.

The trial court found that Gonzales breached his fiduciary duty to the corporation and minority shareholders by overcharging for shares and by failing to notify the shareholders of the sale as required by the articles of incorporation.

Further, the trial court found that "[t]o the extent there are any discrepancies in testimony as to any material fact between [respondents'] witnesses and defendant's witnesses, the Court believes [respondents'] witnesses and disbelieves defendants' witnesses. The Court did not find any defense

witness as credible." Finally, the court found that "this action was brought within three years from first discovery by [respondents] in 1989."

This appeal ensued.

## Standard of Review

■ "A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276.)

■ In reviewing a challenge to the sufficiency of the evidence, we are bound by the substantial evidence rule. All factual matters must be viewed in favor of the prevailing party and in support of the judgment. All conflicts in the evidence must be resolved in favor of the judgment. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].)

## Discussion

■ Rubio contends respondents' breach of fiduciary duty claim is time-barred under Code of Civil Procedure section 359.[1] According to Rubio, section 359 required that respondents file suit within three years from the time of "the liability created by law." Rubio claims Corporations Code section 309, which sets forth the standard for determining the personal liability of a corporate director for breach of his or her fiduciary duty, was the "liability created by law."[2] Further, Rubio argues the liability was created in 1979 or 1980, when Rubio purchased the shares and the board meeting was held. Since respondents did not file suit until 1991, which was more than three years after 1979/1980, Rubio contends respondents' cause of action for breach of fiduciary duty is time-barred under section 359.

In addressing Rubio's contentions, we first examine section 359. Section 359 provides, "This title does not affect actions against directors, shareholders, or members of a corporation, to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created."

---

[1] All further unspecified statutory references are to the Code of Civil Procedure.

[2] Respondents agree that one of their claims against Rubio was based upon the breach of his fiduciary duties under Corporations Code section 309.

Section 359 was analyzed in *Hoover* v. *Galbraith* (1972) 7 Cal.3d 519 [102 Cal.Rptr. 733, 498 P.2d 981]. In that case, a judgment creditor of a defunct corporation sued the former directors to collect the debt. Directors claimed the action was barred under section 359. In addressing this issue, the California Supreme Court noted that *"the time of discovery is not . . . important.* The inquiry on this appeal is to determine *when the liability was created* and whether this action was brought within three years thereafter, excluding the period of time in which the statute of limitations was tolled." (*Hoover* v. *Galbraith, supra,* 7 Cal.3d at p. 522, italics added.)

*Hoover* explained that liability is "created" when the contract, act, or omission by which the liability is incurred is consummated. (*Hoover* v. *Galbraith, supra,* 7 Cal.3d at p. 524.) Thus, in *Hoover,* the directors' liability arose when the directors distributed the assets without providing for payment of the creditor's claim, *not* when the creditor obtained its judgment against the corporation or when the judgment became final.

*Hoover* reasoned, "Section 359 differs from the usual statutes of limitation which commence when the cause of action accrues. [Fn. omitted.] The history of this section is well known. It was enacted at a time when the state Constitution provided for proportional liability of shareholders (art. XII, § 3, repealed 1930). It was intended to place reasonable limits upon the time within which the direct primary liability of the shareholders could be enforced; suit could be brought by the creditor against the shareholder; and a judgment against the corporation was not a condition of suit. [Citation.] It was strictly construed and sometimes barred a cause of action before it accrued. However, most of the cases related to the proportional liability of shareholders, and distinguished this from any common law liability of shareholders. [Citations.] . . . Section 359 was not repealed when article XII, section 3, of the state Constitution was repealed and it remains vital and valid. The wisdom behind the statute is not for the courts. Its application in a particular case is a matter for judicial determination." (*Hoover* v. *Galbraith, supra,* 7 Cal.3d 519, 525.)

■ Accordingly, under section 359, the three years starts to run from the time the liability was created, rather than from the time when the cause of action accrues. (7 Cal.3d at p. 525.) Moreover, in contrast to other statutes of limitations, in deciding when the liability was created, the time when the plaintiff actually discovered the injury/wrongful act is not dispositive. (*Id.* at p. 522.)

Having so determined, we must next decide whether section 359 applies to respondents' cause of action. Section 359, by its plain terms, applies to

actions against "directors . . . to enforce a liability created by law . . . ." We must decide whether respondents' breach of fiduciary claim under Corporations Code section 309 constitutes an action "to enforce a liability created by law."

At first blush, *Smith* v. *Superior Court* (1990) 217 Cal.App.3d 950 [266 Cal.Rptr. 253] appears dispositive. *Smith* held that Corporations Code section 309 was a "liability created by law" and therefore Code of Civil Procedure section 359 applied to a claim against a corporate director for negligence and breach of fiduciary duty. *Smith* involved an action by a condominium homeowners association against the former president of the association's board of directors. The association alleged that the president was negligent and breached his fiduciary duty for failing to timely sue the condominium developer for various construction defects. The president argued that the association's complaint was time-barred under section 359. The appellate court agreed, stating "[b]y its plain language, the three-year statute of limitations in section 359 applies where there is a statutory basis for actions against directors, shareholders, or members of a corporation." (217 Cal.App.3d at p. 953.)

Although Rubio argues *Smith* controls the result here, we disagree. Careful analysis reveals that *Smith* misapplied the phrase "liability created by law." ▮ A cause of action is based upon a liability created by law only if it exists by virtue of an express statute or constitutional provision, *and did not exist at common law*. (*Coombes* v. *Getz* (1933) 217 Cal. 320 [18 P.2d 939].) *Smith* recognized that a liability created by law "does not extend to actions arising under the common law" (217 Cal.App.3d at p. 953), but *Smith* apparently concluded that if there was a statutory basis for an action, it automatically constituted a "liability created by law," regardless of whether the statute merely codified existing common law. As the United States Supreme Court has stated, "Some statutes imposing individual liability are merely in affirmation of the common law, while others impose an individual liability other than at common law." (*McClaine* v. *Rankin* (1905) 197 U.S. 154, 161 [49 L.Ed. 702, 706, 25 S.Ct. 410].)

Indeed, the cases *Smith* relied upon as authority for its holding do not support *Smith*'s result. *Coombes* v. *Getz, supra,* 217 Cal. 320, which was cited by *Smith*, explained, "The term 'created by law' as used in section 359 of the Code of Civil Procedure has a somewhat restricted meaning. In one sense every liability giving rise to a cause of action may be said to be a creature of law. [Citation.] But in the sense in which the term is used in said code section, it is confined and restricted to a liability which exists by virtue of an express statute, and *it does not include nor extend to actions arising under the common law*. [Citation.] It does include, however, a liability

arising under the Constitution." (*Coombes* v. *Getz, supra*, 217 Cal. at pp. 333-334.)

Applying this rule, *Coombes* explained that directors' liability *for their own* misappropriations or misappropriations made *with their consent*, constituted a liability that has existed " 'ever since there have been courts of equity and corporations or trustees.' " (*Coombes* v. *Getz, supra*, 217 Cal. at p. 335.) By contrast, directors' liability for the misappropriations of *fellow directors or officers*, made *without the directors' knowledge or consent*—the situation presented in *Coombes*—"was something *which did not exist at common law*, and was brought into existence by said section of the Constitution. Prior to the enactment of said section of the Constitution no such liability existed. Plaintiff's cause of action rests entirely for its validity upon the right given creditors of a corporation by this section of the Constitution. It is, therefore, . . . an action to recover on a liability created by law." (*Coombes* v. *Getz, supra*, 217 Cal. at p. 335, italics added.)

*Coombes* demonstrates that a director's liability for the misappropriations of *fellow directors*, made without the *director's consent*, did not exist at common law. *Coombes* also establishes that liability which existed at common law is *not* a "liability created by law." (217 Cal. at p. 335.) Thus, *Coombes* does not support *Smith*'s conclusion that a liability which is expressed within a statute automatically constitutes a "liability created by law."

*Smith* also relied upon *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447]. In that case, the California Supreme Court discussed the liability and duties of corporate directors and officers. In so doing, the court distinguished between the directors' statutory duty of care, which is a duty owed to shareholders and creditors, and the common law duty every person owes to others—the duty to not engage in conduct which poses an unreasonable risk of injury to others. (*Id.* at p. 507.) *Smith* appears to rely upon *Frances T.*'s reference to a corporate director's "statutory duty of care" as authority for its conclusion that the directors' duty is a liability created by law. However, as we have explained, not every liability codified by statute constitutes a liability created by law.

In sum, the cases *Smith* relied upon do not support its conclusion. Indeed, *Coombes* v. *Getz, supra*, is directly contrary to *Smith*'s holding. *Frances T., supra*, on the other hand, did not address the issue but simply referred to the directors' fiduciary duty as being a "statutory duty of care."

In an analogous situation, *Jackson* v. *Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1320 [269 Cal.Rptr. 877] described the correct rule. In that case, the court quoted Witkin, stating, "A cause of action is based upon a *liability created by statute* ' "only where the liability is embodied in a statutory provision *and was of a type which did not exist at common law.*" ' [Citations.]" (*Ibid.*, italics added.) In *Jackson* v. *Cedars-Sinai Medical Center*, *supra*, the court held that causes of action for alleged violations of the Lanterman-Petris-Short Act sounded in tort and did not constitute newly created rights wholly statutory in nature. For this reason, *Jackson* found that section 338, subdivision (a), which provided for a three-year limitation period for an action based upon a liability created by statute, was inapplicable. (220 Cal.App.3d at p. 1321.)

*F.D.I.C.* v. *McSweeney* (9th Cir. 1992) 976 F.2d 532 criticized *Smith* v. *Superior Court, supra*, 217 Cal.App.3d 950. *F.D.I.C.* decided that ". . . the *Smith* court's decision conflicts with settled California law on the question of when a liability is created by law. [Citations.] Therefore we agree with the officers that the *Smith* holding is unlikely to be adopted by the California Supreme Court, and thus is not controlling here." (*F.D.I.C.* v. *McSweeney, supra*, 976 F.2d at p. 536, fn. 3; see also *De Malherbe* v. *Intern. U. of Elevator Constructors* (N.D.Cal. 1978) 449 F.Supp. 1335, 1350 [liability created by statute and liability created by law refer to liabilities which did not exist at common law].)

In *Hoffman* v. *Wair* (D.Ore. 1961) 193 F.Supp. 727, 729-730, the court stated, " 'The phrase "liability created by statute" or "liability created by law," within the meaning of such a statute, has been held not to include or extend to actions arising under the common law' . . . [Citation.] [¶] 'The test of "a liability created by statute" is whether or not " ' "independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether, independently of the statute, the right of action exists for a breach of the duty or obligation imposed by the state." ' [Citations.]" This definition has been generally accepted and approved by the majority of the courts of this country. [Citations.]' "

Having concluded that a liability expressed within a statute is not automatically a "liability created by law," we next consider the situation presented here. ▮▮▮ Rubio contends that a directors' liability under Corporations Code section 309 is a liability created by law. Thus, we must decide whether section 309 merely codified a liability which was present under the common law, or whether it established a *new* liability which, prior to the enactment of section 309, did not exist.

Corporations Code section 309 was enacted by the Legislature in 1977. It defines the standard for determining the personal liability of a director for

breach of his or her fiduciary duty to a profit corporation. (*Frances T.* v. *Village Green Owners Assn., supra,* 42 Cal.3d 490, 506, fn. 13.) "Section 309 [citation] codifies California's business judgment rule." (*Gaillard* v. *Natomas Co.* (1989) 208 Cal.App.3d 1250, 1264 [256 Cal.Rptr. 702].)

Corporations Code section 309 combines the notion of a director's immunity from liability for an honest mistake of business judgment with the concept of a director's obligation to use reasonable diligence in performing his or her duties.[3] (*Gaillard* v. *Natomas Co., supra,* 208 Cal.App.3d at p. 1264.) It also expresses the concept that a director is entitled to rely upon certain information provided by others.[4] Under section 309, subdivision (c), "A person who performs the duties of a director in accordance with subdivisions (a) [standard of care] and (b) [reliance upon others] shall have no liability based upon any alleged failure to discharge the person's obligations as a director. . . ."

With respect to the notion of an honest mistake of business judgment, California courts have long held that a director is not responsible for such honest mistakes. For example, in *Fornaseri* v. *Cosmosart Realty etc. Corp.* (1929) 96 Cal.App. 549 [274 P. 597], the court explained, "[i]n the absence of fraud, breach of trust or transactions which are *ultra vires,* the conduct of directors in the management of the affairs of a corporation is not subject to attack by minority shareholders in a suit at equity, where such acts are discretionary and are performed in good faith, reasonably believing them to be for the best interest of the corporation. . . . [¶] . . . Every presumption is in favor of the good faith of the directors. Interference with such discretion is not warranted in doubtful cases." (*Id.* at p. 557.)

---

[3]Corporations Code section 309, subdivision (a) provides, "(a) A director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."

[4]Corporations Code section 309, subdivision (b) provides, "(b) In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

"(1) One or more officers or employees of the corporation whom the director believes to be reliable and competent in the matters presented.

"(2) Counsel, independent accountants or other persons as to matters which the director believes to be within such person's professional or expert competence.

"(3) A committee of the board upon which the director does not serve, as to matters within its designated authority, which committee the director believes to merit confidence, so long as, in any such case, the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted."

Similarly, in *Burt* v. *Irvine Co.* (1965) 237 Cal.App.2d 828 [47 Cal.Rptr. 392], the court reasoned, "A director cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment. Courts have properly decided to give directors a wide latitude in the management of the affairs of a corporation provided always that judgment, and that means an honest, unbiased judgment, is reasonably exercised by them." (*Id.* at p. 853.)

Further, the legislative committee comment to Corporations Code section 309 states that ". . . it is the intent of the draftsmen of this provision, by combining the requirement of good faith within the standard of care, to incorporate '*the familiar concept* that, these criteria being satisfied, a director should not be liable for an honest mistake of business judgment' . . ." (Legis. committee com., Deering's Ann. Corp. Code (1977 ed.) § 309, p. 205.) The drafter's reference to "familiar concept" supports the conclusion that section 309 did not establish a new and unique liability.

With respect to the concept of reliance upon others under Corporations Code section 309, subdivision (b), "It has long been recognized at common law that the function of the board of directors is to determine the general business policy of the corporation and that the directors are entitled to rely upon the officers and employees of the corporation, both in carrying out that policy and in receiving reports and information upon which to base that policy." (2 Marsh, Cal. Corporation Law (3d ed. 1996) § 11.4, p. 804.) In the 1901 case of *Dovey* v. *Cory*, Lord Halsbury stated, "I cannot think that it can be expected of a director that he should be watching either the inferior officers of the bank or verifying the calculations of the auditors himself. The business of life could not go on if people could not trust those who are put into a position of trust for the express purpose of attending to details of management." (*Dovey* v. *Cory* (1901) A.C. 477, 486; see also legis. committee com., Deering's Ann. Corp. Code, *supra*, § 309, p. 205.)

For the reasons expressed above, it is clear that Corporations Code section 309 did not create a new form of liability against directors of corporations but merely codified and refined existing law. Under *Coombes* v. *Getz, supra*, 217 Cal. 320, therefore, Corporations Code section 309 does not constitute a "liability created by law." (Cf. *Jackson* v. *Cedars-Sinai Medical Center, supra*, 220 Cal.App.3d 1315, 1321; *F.D.I.C.* v. *McSweeney, supra*, 976 F.2d

532.) Since Corporations Code section 309 is not such a liability, the limitations period set forth within Code of Civil Procedure section 359 is inapplicable.[5]

Finally, Rubio also contends his conduct did not breach his fiduciary duties or violate the articles of incorporation. However, the trial court found otherwise. The trial court found that the articles of incorporation were violated, that Rubio breached his fiduciary duties by, among other things, accepting back pay and collecting rental payments. The trial court also found that the defense witnesses were not credible. Such determinations are for the trial court in the first instance. Having reviewed the record, we conclude the trial court's findings are supported by substantial evidence. (*Nestle* v. *City of Santa Monica, supra*, 6 Cal.3d 920, 925-926.)

### Disposition

The judgment is affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.

---

[5]Although Rubio argues that respondents' cause of action is also barred by the doctrines of estoppel and laches, this claim is clearly without merit since the trial court expressly found respondents did not discover the improper stock transactions until 1989.